CHARLES E. JACKSON, APPELLANT, VS. CHRISTINA A. RELF, JOHN S. RELF, HER HUSBAND, AND JOHN S. RELF, AS ADMINISTRATOR OF THE ESTATE OF S. H. WILLIAMS, DECEASED, APPELLEES.

1. Where a cause in consequence of disqualification of the Judge is transferred to another Circuit, and afterwards the defendant enters his appearance, files an answer and cross-bill, and proceeds in the case till final hearing and decree, it is too late for him to complain here that the transfer was made without notice to him.

2. A merger takes place when a greater estate and a less meet in one and the same person, in one and the same right, without any intermediate estate, the lesser estate being thereby merged in the greater; but merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place.

3. Where a mortgage incumbrancer becomes the owner of the legal title, or of the equity of redemption, a merger will not be held to take place if it be apparent that it was not the intention of the owner, or if in the absence of any intention, the merger would be against his manifest interest. And a purchase of the mortgaged estate at a tax sale by the mortgagee, to protect the mortgage lien and save the property from being lost to him, does not effect a merger.

4. It was not error to sustain a demurrer to a cross bill clearly defective in respect to insufficiency in making parties and in its statement of the matter of the original bill; in being uncertain and indefinite as to matters on which counter relief is sought, and in seeking relief which, if allowable at all, might have been had under appropriate answer to the original bill; and in insufficient allegations in regard to deficiency of land which should have come to complainant under his purchase, on which to found a claim for relief; nor error to sustain exceptions to the answer to the original bill, for similar uncertainty, indefiniteness and insufficiency.

5. Where a mortgagee pays taxes on the mortgaged property because of default of the mortgagor in making the payments, the amount so paid should be allowed the mortgagee in his foreclosure suit.

Appeal from the Circuit Court for St. Johns County.

The facts of the case are stated in the opinion.

*John W. Price*, for Appellant.

*C. P. & J. C. Cooper*; *J. W. Henderson*, for Appellees.

MAXWELL, J.: One Williams sold certain lands in Volusia county to appellant and P. W. Burr, in 1872, and appellant and Burr, on the same day, gave a mortgage on the lands to secure the payment of ten promissory notes of theirs for the purchase price, some to Williams, some to C. A. Relf, and one to W. A. Robinson. Burr afterwards sold his interest in the lands to appellant. Williams having died, J. S. Relf was appointed administrator of his estate. C. A. Relf, and her husband J. S. Relf, and J. S. Relf, as administrator of Williams, claiming that two of the notes to C. A. Relf, and two of those to Williams remain unpaid, filed a bill against appellant to foreclose the mortgage on such of the lands as he still owned, for the satisfaction of the unpaid notes, and also for the recovery of moneys paid for taxes on the lands, which appellant failed to pay, permitting the lands to be sold for said taxes.

The bill was filed in Volusia county, but in consequence of the disqualification of the Judge to try the case it was transferred to St. Johns county, in another circuit. This was done without notice to appellant, and he presents it here as error. After the transfer, his solicitor entered a general appearance, filed an answer and a cross-bill, and proceeded in the case till the final hearing and decree, but made no objection to the transfer. Having thus acquiesced in the transfer, his objection to it in this court comes too late.

After the appearance for defendant was entered, a plea of merger was filed, based, as alleged in the plea, on this state

of facts :   The mortgaged lands described in the bill  were sold for taxes, and the  complainants in the  suit became the purchasers, and, "on the  first  day  of  April,  1878, the  said land was conveyed to them by an absolute deed, conveying the  absolute title  therein  to the  said complainants.   They thereafter claimed  to have a good  and sufficient and absolute  title therein  in fee  simple to the  exclusion of  this respondent, any  and all  other  persons."   And  they also at another time  "purchased and  obtained all  the land  named and described in their bill  for the foreclosure of said  mortgage therein  described from  the State of  Florida, and for which they took an absolute deed from the State of Florida conveying to them the  absolute title  to the  said Christina A. Relf, wife of  John S. Relf, complainant, * * by  reason of which complainants, J. S. Relf and C. A. Relf, claim to own and possess the absolute and indefeasible estate in said land." The  plea then  says that "by reason of  said sales and  purchases the  mortgage, if any existed at the time of the aforesaid purchases, * * merged into and became part of said real estate now in the said complainants, purchased as aforesaid, and ceased to exist as a mortgage."   Complainants set the plea down for hearing as  insufficient in law as a  defense to their bill, and the Court overruled the plea. This is assigned as one of the errors.

Without regard to  other  manifest insufficiencies of the plea, we will limit ourselves to the question of merger which it attempts to present.   "In law a merger always takes place when a  greater estate and a less  coincide and meet in one and the same person, in one and the  same  right, without any intermediate estate.   The lesser estate is annihilated or merged in the greater."   1 Jones on  Mortgages, Sec. 848. Frequent examples of this  occur in cases of  mortgage of real estate.   When a mortgage on lands and the equity of

redemption in the same lands have become united in the same person, ordinarily the mortgage is merged—in other words, ceases to be an incumbrance—and the owner will hold the lands with an unincumbered title, if there be no other mortgage or lien.   But this is not always and necessarily the result.   Whether it is or not, depends upon the intention of the person in whom the interests are united, and that intention is to be determined by his declarations at the time, or, in the absence of these, by his interest as shown in the condition of things then existing, or by the attending circumstances.   When there is no evidence of the intention of the owner in uniting the legal and equitable estates in himself, it is proper to presume that he intended that effect which is the most beneficial to him. *Ibid,* Sec's 857, 873.   As expressed in Factors', etc., Ins. Co. vs. Murphy, 111 U. S., 738, in equity "it has been uniformly held that where an incumbrancer, by mortgage or otherwise, becomes the owner of the legal title, or of the equity of redemption, the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, said merger was against his manifest interest."   These authorities, so far as they relate to the mortgagee, apply to a case of the purchase of the equity of redemption by him.   It is easy to see that the intention in such a case to keep the mortgage alive, cannot be so readily inferred as it can when the purchase is to discharge some other incumbrance on the property, which stands in the way of the mortgage.   In the latter case, the almost necessary inference, in the absence of evidence to the contrary, is that the purchase is intended to be for the protection of the mortgagee's interest ; and in such a case there will be no merger, for it is better for him to preserve the lien of his mortgage, and there is generally an advan-

tage to the mortgagee in preserving his mortgage title.   1 Jones on Mortgages, Sec's 857 870.   No better illustration of this can be given than is presented in the mortgagee's purchase shown in the present case.   It was a purchase to save the mortgaged property from being lost to her under sale for taxes.   The mortgagor, so far as appears, has never been disturbed in his possession, and he does not allege that there has ever been any demand on him for possession, but only alleges that the mortgagee claims absolute title to the property through his tax purchase. Under such circumstances it would be extremely unreasonable to infer an intention to extinguish his mortgage; and as to his interest, that certainly would not lie in its extinguishment. So that, if merger is made to depend on the intention, or on the interest of a party who thus unites the two titles in himself, it cannot be said that it was effected in this case.   It seems to be a plain instance in which the mortgagee, being under no obligation to pay the tax incumbrance, did pay it by the purchase to protect her mortgage lien.   Else why did she take no step to get possession of the property?

And we are also authorized to take this view from the state of the pleadings.   One of the allegations of the bill is that Mrs. Relf, one of the mortgagees, "was forced to bid in a large proportion of the property at tax sale for non-payment of the taxes thereon to protect her interest therein, and has paid the taxes thereon for each succeeding year to preserve the same as a security for the claim of your oratrix (Mrs. R.) and your orator (Mr. R.) as administrator" of Williams.   The defendant nowhere denies this.   The rule in such a case is, that "upon the argument of a plea, every fact stated in the bill and not denied by the averments in the plea, and by the answer in support of the plea, must be taken as true."   1 Daniell's Chancery Pleading and Prac-

tice (5th Ed.), 695; Allen vs. Randolph, 4 John. Ch., 692. Under this rule it must be held that the object of the tax purchase was to protect the mortgage lien, and that there was no merger.

Another difficulty in the way of the merger is that the purchase was by only one of the mortgagees. The other mortgagee, Williams, represented since his death by his administrator, who, as such, is one of the complainants in the bill, has no other than his mortgage title, and hence there is nothing whatever to work a merger as to him.

In opposition to the doctrine on which we base our conclusion, we are cited to South Carolina cases (Devereux vs. Taft, 20 So. Ca., 555; Bleckeley vs. Branyan, 26 So. Ca., 424), which sustain the position of appellant. But that State stands alone on the subject, and these and other like decisions of her court are more stringent than any we find from other courts. Without discussing the matter further, we think the better and more equitable rule is that which we have adopted and which gives effect to the intention of the party who unites the higher and lesser title in himself, and also takes account of his interest as shown by the circumstances. We think this accords with the great mass of authority. See 1 Jones on Mortgages, Chapter on merger, and authoities there cited; and 2 Pomeroy's Equity Jurisprudence, Sec. 786, *et seq.*

In our opinion the other errors set forth in the petition of appeal are not well assigned, but it is unnecessary to give our reasons at any length. The cross-bill is clearly defective in many respects—as to insufficiency in making parties and in its statement of the matter of the original bill; in being uncertain and indefinite as to those matters on which counter relief is sought, and in seeking relief which, if allowable at all, might have been had under appropriate

answer to the original bill; and in insufficient allegations in regard to deficiency of land which should have come to complainant under his purchase, on which to found a claim for relief. It was not error in the Court, therefore, to sustain the demurrer to the cross-bill. Nor was it error to sustain certain of the exceptions to the answer to the original bill, for similar uncertainty, indefiniteness and insufficiency. As to alleged error in confirming the report of the master, there are only one or two matters on which we are definitely informed as to the point wherein the error consists. One of these relates to admitting in evidence the contents of certain papers not produced; but which it was shown were lost or destroyed. The objection to this evidence was properly overruled. Another relates to the mode of calculating interest, the point being that interest was calculated on the principal of the notes up to the time of the master's report, but not on the amounts paid and credited on the notes. As it seems that the payments never exceeded the interest due, and that the calculation was made upon the principal after allowing the proper credits, there was no error in not figuring interest on the payments. In regard to the items of taxes paid by one of the complainants, which the master included in his report as amounts to be reimbursed by the appellant, they were properly allowed. 2 Jones on Mortgages, Sec's 1080, 1134. Other objections to the master's report are not pointed out in other than a general way, which leaves the Court without sufficiently definite information to guide its researches; but upon examining the evidence in connection with the report we are unable to find that the master made any improper charge against appellant.

The decree will be affirmed.