Campbell v. Kauffman Milling Co.—Syllabus.

A. B. CAMPBELL AS ASSIGNEE AND T. D. GIBBENS, APPELLANTS, VS. THE KAUFFMAN MILLING COMPANY, APPELLEE.

The following rule governing quasi estoppels by the election of inconsistent positions or remedies approved: "A party .cannot, either in the course of litigation or in dealings *in pais* occupy inconsistent positions. Upon that rule. election is founded. A man shall not be allowed to approbate and reprobate. And where a man has an election between several inconsistent courses of

action, he will be confined to that which he first adopts. The election, if made with knowledge of the facts, is in itself binding. It cannot be withdrawn without due consent. It cannot be withdrawn though it has not been acted upon by another by any change of position."

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the Court.

*W. B. Owen and R. H. Liggett*, for Appellants.

*A. W. Cockrell & Son*, for Appellee.

Taylor, C. J.:

The appellee, the Kauffman Milling Company, a corporation, filed its bill in equity in the Circuit Court of Duval county on the 2nd day of December, 1893, against the appellants alleging in substance therein as follows: That on the 5th day of January, 1893, the said Gibbens was indebted to orator in the sum of $2,655.79 then past due and owing, and also had in his hands certain accounts for flour the property of orator theretofore sold by the said Gibbens as its agent and on its account. The items setting forth these flour accounts, and consisting wholly of sales so made by Gibbens of orators flour and on its account to divers persons named therein and for the amounts severally specified therein, aggregating $1,808.26 are set forth in an exhibit to the bill marked A. That on the 5th day of January, 1893, the said Gibbens made an assignment of his property to Campbell, in trust for the benefit of his creditors, the said Campbell paying no consideration therefor other

than was implied in his acceptance of the trust thereby
created. The said Campbell accepted the said trust
and the said assignment was duly recorded. A copy of
the assignment is attached as exhibit B to the bill. This
deed of assignment is in the usual form, conveys all of
the property, real, personal and mixed, of the said Gib-
bens wheresoever the same may be, except such as is
exempt from execution under the laws and constitution
of Florida, in trust to be converted into money, and to
collect the said rights in action and all sums of money
due and owing to the said Gibbens, and the proceeds
and avails thereof to be devoted, after payment of the
costs and expenses of the execution of the trust, to the
payment in full of all the debts of the said Gibbens, if
the assigned assets shall be sufficient, but if not, then
the same to be paid *pro rata* to his creditors in propor-
tion to the amounts of their respective claims, without
preference, the residue of the assets, if any remaining
after satisfying all debts in full, to be returned to the
said Gibbens. The said deed of assignment contained
also the following general proviso: "Provided, that
nothing herein contained shall be construed to be in-
tended to deprive any person or persons having a valid
subsisting lien, mortgage or legal claim on any of the
property hereby assigned, or any legal rights which they
may have on that account." That at the time of said
asignment the said Gibbens had no interest whatever in
the flour accounts set forth in exhibit A other than a
commission of ten cents per barrel for the flour so
sold by him on orator's account, which interest accrued
to him solely by virtue of his services in selling said flour
for orator, and the said Gibbens had no interest in said
flour before the sale thereof, as shown in said exhibit A,
nor in the said accounts, the proceeds of said sales, other-

wise than in the commission of ten cents  per  barrel
so accruing to him; that said flour had been shipped to
the various persons named in said exhibit, either direct-
ly from the mills operated by your orator from which
the said flour was produced, or had been shipped direct
from said mills as the product thereof and the property
of your orator, to Jacksonville, Florida, and thence to
the said purchasers thereof at the request of said Gib-
bens, who was acting in reference to such  flour  and
such sales solely as the agent of your orator, so that the
flour before the sale, and the proceeds thereof after the
said sale, was and contiued to be the property of your
orator, subject only to the said claim of Gibbens for said
commisions for his services in procuring the said  sale
thereof; that the said assignment purports on its face to
assign all the property of every description belonging to
the said Gibbens, and further provides  that  nothing
therein shall be so contsrued as to deprive any one of any
legal right then existing to the said property; that the
said Campbell as such assignee, took possession of all
property embraced in said conveyance, and also took
possession of said flour accounts, which were turned over
to him by the said Gibbens with said assignment, and
had at the time of the demand hereinafter made upon
him, collected a part of said flour accounts as such as-
signee, and since that demand has collected and con-
verted into money the remainder of said accounts; that
on the 23rd day of February, 1893, your orator made de-
mand upon said Campbell for said accounts and the pro-
ceeds of such thereof as had been collected, but the said
Campbell refused to turn over to your orator said ac-
counts or the proceeds thereof, and the said Compbell
or the said Gibbens to this day has failed and refused to
pay the proceeds of said accounts, or the amount there-

of, or any part thereof, to your orator and the said
Campbell and the said Gibbens have severally failed and
refused to pay, though often requested, said sum of
$2,655.79, or any part thereof, so that the whole of said
sum of $2,655.79 as well as the said proceeds of said
flour accounts are due and owing to your orator. The
said exhibit A to the bill contains an itemized statement
of said flour accounts so demanded of said Campbell;
that on the 18th day of May, A. D. 1893, your orator ob-
tained judgment in this court, on the law side thereof,
against the said Gibbens for the said sum of $2,655.79
and also for the sum of said flour accounts so turned
over by him to said Campbell, together with the costs of
court, and no part thereof or the accounts upon which it
was based have been paid, and the said Gibbens has no
property out of which an execution thereon can be made
in whole or in part; that the said Campbell has made no
accounting to or with any court whatever as to his said
trust, nor did he file, as required by law, in the office of
the clerk of the Circuit Court a statement duly verified
of all his doings and financial transactions as such as-
signee. The said bill prays that the court of equity
take jurisdiction of the administration of the trust cre-
ated by said assignment, and adjudicate in favor of your
orator the special equities herein set up as to said flour
accounts as well as its general equities as a creditor of
said Gibbens; that the said Campbell be made to ac-
count to the said court as to the said trust estate so as-
signed to him; that said trust be closed, and that he be
decreed to pay to your orator and the beneficiaries, sev-
erally, of said trust the amount of amounts so as-
certained to be due them severally. There is also a
prayer for general relief.

The defendant Campbell answered the bill separate-

ly, averring that he was a stranger to all and singular
the matters and things in the bill contained (except as in
said answer stated), and therefore leaves the plaintiff
to make such proof as he shall be able to produce. He
admits the making of the assignment as alleged, and his
acceptance of the trust thereby created; that among
other accounts were a number of flour accounts upon
which he has collected various sums, the total amount of
which for flour is unknown to him, no separate account
having been kept of the same, but the manner in which
said accounts were acquired by the said Gibbens or what
were his relations with the plaintiff, the Kauffman Mill-
ing Company, he is ignorant of and therefore can make
no statement in regard thereto; that he admits that as
such assignee he took possession of the property men-
tioned in said assignment, including flour accounts, and
further admits that complainant made demand upon
him as alleged in said bill, and that at the time of such
demand this defendant had in his possession no money
turned over to him by said Gibbens; that the amount
collected since said assignment of flour accounts is as
above set forth. He admits that he refused to pay over
to said complainant the said flour accounts for the
reason that he saw no evidence from the books of said
Gibbens, or elsewhere, sufficient to satisfy him that Gib-
bens' relation to the said flour accounts was in any man-
ner different from that of any of the other property
turned over to him under said assignmetn, and
nothing shown to prove that Gibbens was not the legal
owner of said acounts up to the date of said assignment.
He denies that he had made no accounting as required
by law as to his said trust, but, on the contrary, alleges
that he had filed in the office of the clerk of the Circuit
Court of Duval county, a verified statement of all his

doings and financial transactions as such assignee as directed by the statute.

The defendant Gibbens also answered the bill separately. He admits that he was indebted to the complainant on the 5th of January, 1893, in the sum of $2,655.79. He admits the making of the assignment to Campbell on January 5th, 1893, as alleged. He denies that at the time of making said assignment the relations of principal and agent practically existed between the complainant and himself in regard to the flour accounts mentioned in said bill. That for ten years he received flour from the complainant; that it was shipped to him in his own name and without being consigned to shipper's order; that he received said flour, paid freight on same and sold it to various parties throughout the State of Florida, billing the same in his own name; that occasionally, when in twenty-five barrel lots and upwards, it was sold in the name of the Kauffman Milling Company, and separate books were kept for that purpose. Where the flour was sold in defendant's name (as about ninety-five per cent. was) the entries of sale and receipts for the same were kept in his own blotter day-book, cash-book and ledger. When sold and issued in the name of the Kauffman Milling Company he did not enter the billing in his set of books at all, and the collection for these bills so made were entirely in the hands of the Kauffman Milling Company. In such cases he made entries in his stock-book only, and were not included in the assignment, as there were no entries of such sales in his books to assignee. The only accounts assigned were those where shipments were made in his name, and where the amounts due for such sales were due to him. This was the manner defendant had conducted the business with complainant during the

whole period of about ten years, no change being made
at any time, all of which was known and acquiesced in
by the said Kauffman Milling Company, that he report-
ed to said company from time to time the amount of
flour he had sold out of the stock received by him,
stating the amount due to said company for which
amounts so reported said company made drafts on him
varying in time from thirty to sixty days, and these
drafts were paid so far as he was able to pay them; that
the said Kauffman Milling Company brought suit
against him for these same flour accounts on the com-
mon law side of this court and garnisheed the said A. B.
Campbell who is alleged to have the proceeds thereof,
and at the Spring term of said court, 1893, said cause
came on for trial, at which time the plaintiff on the 18th
day of May, 1893, after exhausting every effort to
prove the agency of this defendant with reference to
these same flour accounts, and failing to do so, dis-
missed the garnishment proceedings against said Camp-
bell, and added the amount of these flour accounts, by
consent, to the judgment theretofore obtained against
this defendlant for $2,655.79. He denies that at the
date of the filing of the bill herein the said Campbell had
not made an accounting to or with any court as to his
said trust, but says, on the contrary, that he had done so
in accordance with the statute. After separate replica-
tions to these two answers were filed the cause was re-
ferred to a master to take and report testimony. With
a mass of other testimony reported by the master was
the record of a suit in assumpsit instituted by the Kauff-
man Milling Company against T. D. Gibbens in the
Circuit Court of Duval county on the 26th day of Jan-
uary, A. D. 1893, the declaration in which, with at-
tached bill of particulars, is as follows:

"In the Circuit Court of the Fourth Judicial Circuit of the State of Florida, in and for Duval county.

Kauffman Milling Company, Plaintiff, vs. Truman D. Gibbens, Defendant; A. B. Campbell, Garnishee.

Kauffman Milling Company, a corporation organized and existing under and by virtue of the laws of the State of Missouri, by its attorneys A. W. Cockrell & Son, sues the defendant Truman D. Gibbens, for this, to-wit: For money had and received by the defendant for the use of the plaintiff, for goods sold by the defendant for the plaintiff, as shown by the annexed bill of particulars marked exhibit A, made a part hereof, and plaintiff claims $5,000."

"Bill of Particulars Attached.

St. Louis, Jany. 30th, 1893.

T. D. Gibbens, Jacksonville, Florida,

For amount due on sale flour account,

KAUFFMAN MILLING COMPANY.

| 1892. | | | |
|---|---|---|---|
| Nov. 4 | Sales Flour Stub | 3075 | 300.00 |
| 26 | Sales Flour Stub | 3081 | 200.00 |
| Dec. 7 | Sales Flour Stub | 3083 | 441.90 |
| 13 | Sales Flour Stub | 3084 | 575.40 |
| 18 | Sales Flour Stub | 3085 | 598.88 |
| 23 | Sales Flour Stub | 3089 | 523.53 |
| 28 | Sales Flour Stub | 3090 | 756.07 |
| 1893 | | | |
| Jan. 2 | Sales Flour Stub | 3091 | 695.20 |
| 6 | Sales Flour Stub | 3093 | 409.22 |
| | | | 4501.10 |

Less Comms. on Sale Flour ...   37.05
Flour accounts..............1808.26          1845.31

            Balance" ......................$2655.79

        This suit resulted on May 3rd, 1893, in a judgment
at first for $2,779.09, but this judgment was vacated and
set aside by the court on motion of the plaintiff's attor-
ney and the following final judgment entered in the
cause in its stead:

Kauffman Milling Company vs. T. D. Gibbens.

        Come now the parties by their respective attorneys,
and upon motion of plaintiff, the judgment herein ren-
dered May 3, 1893, is hereby vacated and set aside, and
by leave of court the plaintiff amends his bill of particu-
lars.   And now, in open court, the defendant confesses
his indebtedness to the plaintiff in the sum of $4,538.12.
It is thereupon considered by the court that the plain-
tiff, the Kauffman Milling Company, a corporation
organized under the laws of the State of Missouri, have
and recover of and from the defendant, Truman D. Gib-
bens, the sum of $4,538.12 for damages, besides the sum
of $5.49 for its costs in this behalf expended, for which
let execution issue." The proofs in the case established
the following state of facts:  The  Kauffman  Milling
Company for some time prior to the assignment had an
agreement with Gibbens by which said company ship-
ped to Gibbens at Jacksonville, Fla., consignments of
flour to be sold by the latter as its agent on a commis-
sion of ten cents per barrel.  As Gibbens made sales of
such flour he would report to the company and it would
thereupon draw upon Gibbens for the amount sold at

22

thirty and sixty days, which drafts Gibbens would pay until he became insolvent. Gibbens in turn collected from the parties to whom he sold the flour, appropriating the moneys thus collected to meeting the drafts drawn upon him by the Milling Company, and whenever he made a bad sale to an insolvent purchaser and failed to collect for it the amount thus lost was refunded to him by the Milling Company. Gibbens sold the flour to his various customers on short time credit, debiting them to himself on his books for the various amounts sold, the Milling Company having nothing to do with the collections from such purchasers, except in cases where Gibbens sold a bill of twenty-five barrels and upwards to a single purchaser, in which cases the sale was made as being directly from the Milling Company to such purchaser, and the collecting in such cases was made directly by the Milling Company. At the time of the assignment Gibbens owed to the Milling Company, for flour sold by him for which he had collected the sum of $2,655.79, and had on his books of account divers uncollected accounts against divers parties for flour sold to them, aggregating $1,808.26, which accounts, as before stated, were shown upon his books as being due to Gibbens by the parties against whom they stood. These accounts, with others due to Gibbens, were turned over by him at the time of his assignment to Campbell, his assignee. The bill shows that the Milling Company knew on February 23rd, 1893, that such accounts had been turned over to the assignee, Campbell, since it alleges that on that date it made demand on Campbell, the assignee, for the same; yet on May 18th, 1893, it included the amount of said accounts in its judgment at law against Gibbens upon a declaration for money had and received by him for their use.

Upon this proof the chancellor below made the following final decree on January 25th, 1895:

"In the Circuit Court of the Fourth Judicial Circuit of the State of Florida, in and for Duval County. In Chancery.

The Kauffman Milling Co. vs. A. B. Campbell *et al.*

This cause coming on to be heard upon the pleadings and exhibits and the evidence reported by the master, and the documentary evidence proved by the defendants, upon the hearing, was argued by counsel, and submitted for final decree, and the court having duly considered said matters, it is now ordered, adjudged and decreed:

1. That the complainant is entitled to the relief prayed in the bill, both as to the administration by this court of the trust created by the assignment made by the said Truman D. Gibbens to his co-defendant the said A. B. Campbell set up in the bill, and as to complainant's equity to the flour acounts, set up as Exhibit "A" to the said bill, hereby adjudicated to exist, as prayed, in said complaint.

2. That this court hereby takes jurisdiction of the administration of said trust, and the equities so adjudicated in favor of complainant.

3. That the defendant A. B. Campbell, file within ten days from the date hereof, a just, full and true account of all his receipts and disbursements and vouchers for said disbursements, as assignee of said Truman D. Gibben, duly verified by his affidavit, with a statement of the properties and assets, including accounts remaining in his hands not sold or collected, if any. That in making up his said accounts the said Campbell separate from his general accounts the flour accounts itemized as

Exhibit "A," filed with the bill, and make return unto this court showing what moneys and from whom and when have been collected on said flour accounts, and also showing a list of the uncollected accounts, if any, itemized in said Exhibit "A."

4. It is further adjudged and decreed that the proceeds of the flour accounts as collected be paid to said complainant and the uncollected accounts be turned over to said complainant, the aggregate amount of the proceeds so paid and the sum of the accounts so turned over to be applied as a credit on the judgment recovered against the said Truman D. Gibbens as set up in said bill; and the complainant in respect of the balance of its said judgment shall participate *pro rata* in the proceeds with the other claims to be adjudicated herein of the said general accounting by the said assignee.

5. That the said Campbell, as such assignee, at once give notice by the publication thereof for four weeks in the Florida Times-Union (daily) to the creditors of Truman D. Gibbens, beneficiaries of the trust created by said assignment, to file their claims duly verified, in this cause on or before the first day of March, 1895, and that in default of such filing the said creditors so in default shall be barred of any participation in the proceeds of said trust.

6. That the several creditors so filing claims and the complainant herein be allowed severally to contest the existence or amount of claims, other than the claims of the complainant herein adjudicated, of the said other several creditors, on or before the 10th day of March, 1895.

Done and ordered this Jan. 25th, 1895.

R. M. CALL, Judge."

From this decree both defendants to the bill have jointly appealed and assign the decree as error.

Under the circumstances in proof that feature of the decree that requires the assignee Campbell to pay over to the complainant, the Kauffman Milling Company, to the exclusion of other creditors of T. D. Gibbens, the proceeds of all collections made by him as assignee from the flour acounts turned over to him as assignee by Gibbens, and to deliver up to said Milling Company all of such flour accounts that he may still have on hand uncollected, and requiring such collected and uncollected flour accounts to be credited on the common law judgment recovered by said Milling Company against Gibbens, is erroneous. If, under the contract for the sale of flour existing between the Milling Company and Gibbens, as interpreted by their course of dealing with each other, the Milling Company was ever at any time entitled to claim and recover in specie the accounts representing debits to Gibbens on his account books for flour sold by him, the facts show that it has forfeited such right in this case by electing, with full knowledge of all the facts, to pursue an inconsistent remedy from the one sought and granted in this case. When it discovered the fact that Gibbens had turned over to his assignee uncollected accounts against divers persons representing sales of its flour, if it had the right to possession in specie of such accounts or to the collection and appropriation thereof, to the exclusion of the other creditors of Gibbens, and *non constat* the deed of assignment from Gibbens to Campbell, it should have by appropriate proceedings against Campbell pursued such accounts and the collections made therefrom specifically from his hands; but, instead thereof, it voluntarily, with full knowledge that such accounts were in Campbell's hands,

took judgment for the amount thereof in an action for
money had and received against Campbell's assignor,
Gibbens, for the full amount of such accounts. After
having recovered such judgment against Gibbens it
now, by this bill in equity brought against both Gibbens
and Campbell, inconsistently seeks to recover in specie
from Campbell as assignee the specific accounts them-
selves and their proceeds that have already been merged
in its judgment at law as an *adjudicated personal in-
debtedness against Gibbens*. The two courses of action
are inconsistent with each other, for the reason that the
Milling Company was not and is not entitled to have
both the flour accounts in specie or their proceeds at
the same time with judgment at law against Gibbens for
the amount represented by such flour accounts. It was
entitled to one or the other, but not to both at the same
time; and having elected to treat the sums represented
by said flour accounts as items of personal indebtedness
due to it from Gibbens and to take judgment against
him therefor, it has elected its remedy and is bound
thereby, and is estopped thereby from recovering the
account themselves or their specific proceeds from Gib-
ben's assignee. The rule governig *quasi* estoppels by
the election of inconsistent positions or remedies is thus
stated by Bigelow on Estoppel: "A party can not
either in the course of litigation or in dealings *in pais*
occupy inconsistent positions. Upon that rule election
is founded; a man shall not be allowed to approbate and
reprobate. And where a man has an election between
several inconsistent courses of action, he will be confined
to that which he first adopts; the election, if made with
knowledge of the facts, is in itself binding; it can not be
withdrawn without due consent; it can not be withdrawn
though it has not been acted upon by another by any

change of position." Smith v. Hodson, 4 Term. Rep. 211, S. C. 2 Smith Lead. Cas. 1372; Wilson v. Poulter, 2 Strange 859; Priestly v. Fernie, 3 Hurlst. & Colt. 977; Ker v. Wauchope, 3 Eng. Rul. Cas. 326; Smith v. Baker, L. R. 8 C. P. Cas. 350; Brinsmead v. Harrison L. R. 7 C. P. Cas. 547; Bank of Beloit v. Beale, 34 N. Y. 473; Cheeseman v. Sturges, 9 Bosworth 246; Boots v. Ferguson, 46 Hun. 129; Fowler v. Bowery Sav. Bk. 113 N. Y. 450, 21 N. E. Rep. 172, S. C. 10 Am. St. Rep. 479; Fields v. Bland, 81 N. Y. 239; Rice v. King, 7 Johns. 20; Walsh v. Chesapeake and Ohio Canal Co., 59 Md. 423; Deitz v. Field, 10 Hun Appellate Div. 425; Terry v. Munger, 121 N. Y. 161, 24 N. E. Rep. 272, S. C. 8 L. R. A. 216.

The position is taken here that the two appellants Gibbens and Campbell are not so jointly affected by the decree appealed from as that they can jointly assign errors as they have done. We do not agree with this contention. When the Milling Company had elected the inconsistent remedy of suing and recovering judgment at law against Gibbens for money had and received by him upon these flour accounts, such election was a complete bar to his maintenance of this bill against either of the defendants, and, they were, therefore, so jointly affected by the decree as that both can assign error thereon jointly.

The decree appealed from is reversed with directions to dismiss the bill. The appellee to pay the costs of this appeal.

CARTER, J., dissenting:

While I do not deny the general proposition that where the law supplies to a party two or more methods

of redress in a given case, based upon inconsistent theories, the party is put to his election between them, and a resort to either is a bar to his resort to the other, I do not think the facts of this case bring it within the rule. There can be no doubt that the flour accounts were on January 5th, 1893, the property of appellee. This fact is admitted in the brief of the appellants and the evidence in the case, proves it conclusively. If appellee has not lost its title to these accounts in some way since that time, it still owns them, and as such owner has a right to require the assignee to account for those that have been collected, and to deliver to it those, that are uncollected. The assignmnt was not intended to interfere with appellee's ownership of and legal or equitable rights to these accounts or the proceeds thereof, as appears from the express provision of the assignment quoted in the opinion of the court. If the assignment of the, accounts amounted to a conversion on the part of Gibbens, appellee had two remedies that were not inconsistent: one against Gibbens for conversion, the other and a judgment against Gibbens in an action for conversion, though for the full value of the accounts. would not divest the appellee's title to them nor prevent it from recovering the accounts themselves from Campbell, so long as the judgment remains unsatisfied. This I believe to be the common law rule, though some American authorities seem to deny it. Brinsmead v. Harrison, L. R. 6 C. P. Cas. 584; Ex Parte Drake, In re. Ware, L. R. 5 Ch. Div. 866. The only theory upon which it can be held that the appellee has lost its title to the accounts, or that it has made its election of an inconsistent remedy is this: that the assignment of the accounts by Gibbens was wrongful or amounted to a conversion; and

that appellee has ratified the wrongful transfer of the accounts to the assignee by waiving the tort—the conversion—and suing Gibbens in assumpsit for the money had and received by him as the consideration for the wrongful transfer of the accounts.    7 Ency. Pl. & Pr. pp. 368, 369.   It may be that the assignment in this case did not amount to a conversion so as to put appelle. to its election of remedies, but I shall assume that it did, and as I understand the opinion of the court it is so held in this case.   The question then arises, has appellee by taking the judgment against Gibbens ratified his unauthorized assignment of its property and thereby divested itself of its title thereto?   There is nothing in the allegations of the bill or of the answers to show that the judgment was taken in an action of assumpsit for money had and received upon an unauthorized sale of these flour accounts. It is not even hinted in the answers or in the testimony that either party ever supposed or intended that by the assumpsit suit or the judgment obtained therein appellee was ratifying the unauthorized transfer of its property or that it intended to waive the tort, release its rights to its property and look only to the judgment against a confessed insolvent person.   It is quite certain that prior to May 18th, 1893, appellee had taken no step toward ratifying the wrongful act of Gibbens or waiving the tort, for it had demanded its accounts from the assignee, and in the assumpsit suit had expressly excluded these flour accounts from its declaration and bill of particulars   The testimony shows that on   May 18, 1893, the bill of particulars was amended in the assumpsit suit, but in what manner is not shown.   Unless we knew what this amendment was how can we say that the declaration, so far as these flour accounts are concerned, disclosed a cause of action in assumpsit, and not one in

trover, or that appellee intended to declare in assumpsit, and wave the tort? The bill alleges that the judgment included the *sum* of the flour acounts, not the amount Gibbens received from the unauthorized transfer thereof. Gibbens' answer alleges that appellee *added the amounts* of these flour accounts by consent to its judgment theretofore obtained, but it no where appears, either in the pleadings or in the evidence, that the declaration or bill of particulars was amended so as to embrace a demand to recover for these flour accounts or to authorize a recovery under the declaration "for money had and received by the defendant for the use of the plaintiff, for goods sold by defendant for the plaintiff, *as shown by the annexed bill of particulars marked exhibit A, made a part hereof*," for these flour accounts upon the theory of an unauthorized sale or conversion. For aught we know, the amendment of the bill of particulars had no reference whatever to the flour accounts. The amount of the flour accounts was added to the judgment by consent of parties, and the fact that the judgment included the full sum of these accounts indicates that the parties intended to include *damages* for the conversion, and not the sum received by Gibbens upon the wrongful transfer of them (Whilden v. Merchants' and Planters' Nat. Bank, 64 Ala. 1, S. C. 38 Am. Rep. 1; Sligh Furniture Co. v. Shannon, 113 Mich. 473, 71 N. W. Rep. 845), and if such was the fact there has been no election of remedies because a suit to recover damages for conversion and one to recover the property converted are not inconsistent remedies? See English authorities cited *supra*. The mere fact that the amount of the flour accounts was added by consent to the judgment previously obtained in an assumpsit suit does not show

that the sum was not added as damages for conversion of the accounts, nor that the plaintiff waived the tort and ratified the unauthorized transfer by taking that judgment. That question, in the absence of other evidence, must be determined from the pleadings in the assumpsit suit, and as these pleadings as we find them in the record do not profess to recover for these flour accounts, it devolves upon the appellants to produce the amendment to the bill of particulars so as to show that the claim in that suit confessed by Gibbens, so fas as these flour accounts are concerned, was to recover money had and received from their sale, and not damages for their conversion. I find no evidence that the appellee intended, or that appellants for a moment supposed, that by including the amount of the flour accounts in the judgment in assumpsit, appellee was ratifying the unauthorized transfer, or that it was electing a remedy inconsistent with its rights to recover the flour accounts themselves, and where such specific intention does not otherwise appear, it must be shown that the nature of the suit instituted or of the jugment recovered is such that it constitutes in law a decisive and conclusive act of ratification of the wrongful transfer. The facts of this case while they may be consistent with the theory of ratification of the wrongful transfer, are not inconsistent with the theory that there was no such ratification and the fact that appellee demanded its property from the assignee before instituting the assumpsit suit; that the assumpsit suit when first instituted expressly excluded the idea of recovering therein for the wrongful conversion; that the judgment when entered was for the sum of the flour accounts and not for the amount received by Gibbens upon the transfer; that no amendment of the decla-

ration in effect waiving the tort is shown, and the fact that appellee knew that Gibbens was insolvent and that its property was in the hands of the assignee, under an assignment saving its rights in the accounts, all strongly tend to show that there was no idea on the part of appellee of releasing its property in the accounts. • I think the court below decided correctly upon this question. Burn v. Morris, 2 Cromp. & Mees, 579, S. C. 4 Tyrwh, 485; Morris v. Robinson, 5 Dow. & Ryl. 34.