CHASE & Co., *et al.*, v. J. B. LITTLE.

156 So. 609.

Opinion Filed September 27, 1934.

*Hull, Landis & Whitehair,* and *D. C. Hull,* for Appellants;

*E. W. & R. C. Davis,* for Appellee.

BUFORD, J.—The appeal in this case is from a final decree of foreclosure in a suit instituted by the appellee against the

appellants. The facts disclosed are that the appellee, J. B. Little, negotiated the purchase of certain lands which were then subject to the mortgage here sought to be foreclosed. The lands were conveyed subject to that mortgage lien. Little directed the deed to be made to Ruth Stapler, his daughter. By inadvertence, the deed was made to J. C. Stapler, Ruth's husband. J. C. Stapler went into possession of the property. While in possession of this property he became indebted to Chase & Company. While so indebted to Chase & Company, J. C. Stapler, joined by his wife, Ruth Stapler, reconveyed this property subject to the mortgage above referred to, to J. B. Little and J. B. Little, joined by his wife, then conveyed the property, subject to the mortgage to Ruth Stapler. J. C. Stapler defaulted in payments due Chase & Company and Chase & Company filed a creditor's bill to set aside and to have declared null and void the conveyance from J. C. Stapler and wife to J. B. Little and also the conveyance from J. B. Little and wife to Ruth Stapler. This was by way of a creditor's bill after suit at law had been filed against Stapler. Judgment was obtained in the suit at law and thereafter decree was obtained in favor of Chase & Company against all parties defendant in the suit instituted by way of creditor's bill.

There appears to have been no concealment by J. B. Little of his part in the several transactions involved. The record shows that he admitted that the conveyance from J. C. Stapler and wife to J. B. Little was made merely for the purpose of getting the title conveyed from J. C. Stapler to his wife, Ruth Stapler, and that no consideration passed for either of those conveyances. After Little had testified in connection with the creditor's bill suit, he purchased the mortgage and note which it secured from the mortgagee. The note was endorsed to him and the mortgage assigned to him. After prevailing in the suit by way of creditor's bill

Chase & Company had execution levied on the property and bought it in. While Chase & Company were the owners of the property J. B. Little brought suit against the original mortgagor and the then owners, Chase & Company, to foreclose the mortgage.

The bill to foreclose contained all necessary allegations. Motion to dismiss and motion to strike certain allegations of the bill of complaint were properly denied. Answer was filed. The 12th paragraph of the answer was amended, set up as a defense that J. B. Little had theretofore filed a suit against the same parties on the same cause of action praying the same relief and that that suit was dismissed insofar as it related to, or in anywise affected, the defendant Chase & Company. The answer shows that the order dismissing the suit was in compliance with old rule 55 for failure of the complainant to set down a general demurrer which had theretofore been filed by defendant in the said cause.

Motion to strike was granted.

There are two contentions presented for our determination. The first is whether or not J. B. Little is judicially estopped from maintaining the suit on the mortgage because of the result and final decree in the suit by way of creditor's bill. It is contended that when Little bought the note and mortgage he was a party to the suit by way of creditor's bill and that the decree against him in that case precluded his becoming owner of the mortgage with the right to foreclose.

We do not think the position is tenable. There could be no merger in Little of the title and the encumbrance because at the instance of the defendant it was adjudged and decreed that Little was at no time the owner and holder of the legal title to the property. For merger to occur we find the rule stated in 41 C. J. p. 775, as follows:

"Ordinarily, the purchase or acquisition of the equity of redemption in mortgaged premises by the mortgagee results

in a merger of the two estates, vesting the mortgagee with the complete title, and putting an end to his rights or title under the mortgage. But to constitute a merger, the two estates or interests must unite in the same person in the same right, and the estate acquired must be nothing less than the complete legal title in fee, unemcumbered with conditions or restrictive agreements, and not liable to be defeated because of fraud or undue influence, or on other grounds. Furthermore, a merger will not be allowed where it would work injustice or violate well established principles of equity or the intention of the parties."

And again the same author says:

"The conveyance of the mortgaged premises to the mortgagee if fairly and honestly made, where made in satisfaction or cancellation of the debt, extinguishes all right or equity of redemption on the part of the mortgagor, and where the legal title is regarded as vested in the mortgagee by the mortgage and default of the mortgagor, a conveyance taken by the mortgagee in lieu of a formal foreclosure has been held to cut off the rights of a subsequent mortgagee. The mortgagee's purchase of the equity of redemption results in the extinguishment of the mortgage debt, or in a cancellation of the mortgagee's claim under the mortgage, provided such extinguishment is in accord with the expressed or implied intention of the mortgagee, the mortgagee's intent being a question of fact for the jury. But the debt is not extinguished where the mortgagee secures no title to the land by his purchase, or where, at a public sale, the mortgagee buys the property subject to mortgage for less than the mortgage debt."

In the case of Jackson v. Relf, *et al.,* 26 Fla. 465, 8 Sou. 184, this Court said:

"A merger takes place when a greater estate and a less meet in one and the some person, in one and the same right,

without any intermediate estate, the lesser estate being thereby merged in the greater; but merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place.

"Where a mortgage encumbrancer becomes the owner of the legal title, or of the equity of redemption, a merger will not be held to take place if it be apparent that it was not the intention of the owner, or if in the absence of any intention, the merger would be against his manifest interest. And a purchase of the mortgaged estate at a tax sale by the mortgagee to protect the mortgage lien and save the property from being lost to him, does not effect a merger."

In the instant case there was no pretended title in Little at the time he purchased the note and mortgage. So it cannot be maintained that merger resulted from his purchase of the note and mortgage.

The rule applicable to judicial estoppel is stated in 21 C. J. 1228, *et seq.,* as follows:

"A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party.

"In order to work an estoppel the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same and the same questions must be involved. So the party claiming the estoppel must have been misled and have changed his position; and an estoppel is not raised by conduct of one party to a suit, unless by reason thereof the other party has been so placed as to make it unjust to him to allow the first

party to change his position. There can be no estoppel where both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel; or where the positions taken involved solely a question of law. And in no event can estoppel be extended beyond the natural and reasonable import of the acts or conduct relied on to create the estoppel. It has been held that what a defendant may do in a criminal court cannot be pleaded as an estoppel against him in a civil action; but there is authority to the contrary. The general rule may apply, although the position assumed in the first instance was erroneous. A party cannot deny the validity of steps taken by him in another proceeding which would impute to him fraud upon administration of justice in such other proceeding."

Now, in the case before us there is no inconsistency between the positions shown to have been taken by Little in the suit by way of creditor's bill and that taken in the present suit. At that time all parties were charged with notice of the existence of the mortgage here involved and that it constituted an encumbrance upon the lands involved. The position of Chase & Company was not changed by the purchase of the note and mortgage by Little from the mortgagee. The encumbrance continued to exist just as it had existed before that transaction. There was no conduct on the part of Little calculated to mislead Chase & Company in regard to the existence of the mortgage or its effect.

The issues involved in the creditor's suit and the questions to be determined there were entirely foreign to the issues involved in this suit and the questions to be determined in it.

There is no conduct on the part of Little in or about the creditor's suit which prejudiced the position of Chase &

Company in regard to the mortgage here sought to be foreclosed, and, lastly, the subject matter of the suits is not the same. In the former suit the subject matter thereof was certain deeds alleged to have been made in fraud of creditors. The subject matter of the present suit is a lien on certain property, which property was incidentally involved in the creditor's suit. In Warren v. Warren, 73 Fla. 764, 75 Sou. 35, referring to the position sought to be taken by a husband in defense of a suit instituted by the wife that the husband had instituted and endeavored to maintain a suit for divorce against the wife in the same court, we said:

"For the purpose of invoking the jurisdiction of the courts of this State that he might obtain the relief against his wife which he sought, he alleged the truth to be that he had had his domicile in this State for more than two years and had never changed it from Florida, and there being no allegation or evidence of a change since the filing of the bill, he will be estopped from denying the truthfulness of that allegation in a subsequent proceeding in the same court between the same parties involving the same subject matter, viz., the status of the parties as husband and wife and jurisdiction of the court insofar as it depends upon his domicile or permanent or legal residence." Citing: Graham v. Florida Land & Mortgage Co., 33 Fla. 356, 14 S. 796; Weeks v. Reeve, 65 Fla. 374, 61 Sou. Rep. 749; Saunders v. Richard, 35 Fla. 28, 16 South. Rep. 679; Capital City Bank v. Hilson, 64 Fla. 206, 60 South. Rep. 189; Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 South. Rep. 435.

This is not in conflict with what we here hold because the factual conditions shown to exist in that case are not analogous to the factual conditions which we find here.

Old equity rule No. 55 above referred to was promulgated by the Supreme Court of Florida at its April Term, 1873 (See 14 Fla. 1640), and was, to all intents and pur-

poses, the same as Federal Equity Rule No. 38 promulgated by the Supreme Court of the United States in 1842. The adoption of the old equity rule 55 was evidently intended as one to have the same force and effect in the State courts which the Federal Equity Rule 38 had in the Federal Court. Mr. Justice COCKRELL discussed the effect of this rule in the case of Silver Springs & W. R. Co., et al., v. Koonce, 65 Fla. 845, 47 Sou. 390.

In the case of Ryan v. Seaboard & R. R. Co., et al., 89 Fed. 397, the Circuit Court for the Eastern Division of Virginia, speaking through Judge Simonton, said:

"First, then, as to the motion to dismiss under rule 38. Were this rule absolute in its terms, there would seem to be little or no question. It is true that the rule seems to have been very little observed in this district. And it is also true that in the clerk's office there is no book in which to set down formally an order for hearing plea or demurrer under the rule. But the rule nevertheless exists and is so of force. Neither counsel nor the court take the rules of practice from the clerk's office. Nor can the failure of one district to observe a rule make it obsolete even in that district. It may explain the non-observance by counsel. In can scarcely be said that it can excuse it. The rule, however, is not absolute. It has a qualification—'the bill shall be dismissed as of course unless a judge of the court shall allow him further time for the purpose.' The omission to observe the rule was not the default of complainant. It must be imputed to his counsel. As soon as Mr. Crawford retired, he at once employed Mr. Root, and he, in turn, without delay, engaged local counsel, both in Maryland and Virginia. These gentlemen have explained their delay.

"The gravity of the charges in the bill, against gentlemen of character and standing, naturally and properly induced men of standing in the profession to pause before going into

a case in which these charges must be maintained. They felt it due to the defendants, as well as themselves, to examine carefully their grounds before undertaking a case abandoned by the original counsel in it. This rule was intended as a stimulant to parties to make progress in a cause; to perfect the ends of justice—*'Ut sit finis litium.'* So the rules have always been held to be under the control of the court, to be suspended or modified, or to be enforced, if these ends could not be subserved in any other way. Electrolibration Co. v. Jackson, 52 Fed. 773; Poultney v. City of Lafayette, 12 Pet. 472. Were this motion to be granted and the bill dismissed, this litigation would not be ended. No judgment entered on such dismissal would make the matters in dispute here *res judicata.* A judgment on demurrer will not operate as *res judicata;* a *fortiori,* a judgment for not following a rule of court will not. Gould v. Railroad, 91 U. S. 526. 'Where the judgment upon a former action is upon demurrer to the declaration. The estoppel extends only to the exact point raised by the pleadings or decided, and does not operate as a bar to a second suit for other breaches of the same covenant.' Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 410, 12 Sup. Ct. 192. It will also be noted that the hearing of the cause on the injunction was fixed for the 8th February, the 7th (rule day) not suiting the convenience of the court. The counsel then in charge of the cause may well have supposed that on that hearing the demurrer and plea would be discussed, and the necessity for formally setting them down for a hearing be dispensed with. In the exercise of the discretion allowed by the rule, the bill will not be dismissed."

The opinion in the case of Silver Springs and W. R. Co., *et al.,* v. Koonce, *supra,* will be found to be in harmony with the opinion last above cited. So it appears that while a judgment dismissing a bill on demurrer sustained will be

*res judicata* as to the issues there presented an order dismissing a bill for non-compliance with the rule of court will not operate as *res adjudicata*.

For the reasons stated, the decree appealed from should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD and TERRELL, J. J., concur.