KLEIN, J.
The trial court granted defendant’s motion to strike a sham pleading, dismissing plaintiffs complaint with prejudice, because plaintiff had “deliberately made contradictory and inconsistent statements in an effort to interfere with the orderly process” of the court. We reverse.
In 1995 plaintiff sued defendant Alan Blackman and others, alleging that he had wired $905,000 to the Patsy Blackman Family Trust to be invested in Medibar Medical Industries. It was further alleged that Alan Blackman had not invested the funds but used them for his own benefit including making improvements to his home in Coral Springs, Florida. Plaintiff also filed a lis pendens on that home, which resulted in his being named as a defendant in a foreclosure case involving the home.
The trial court dismissed the case based on inconsistencies between affidavits signed by plaintiff and allegations in the third amended complaint. The alleged inconsistency was that plaintiff had sworn the funds were for an investment, then *224 later claimed in the complaint this was a loan. We conclude that the affidavits were not so inconsistent with the loan theory as to make the third amended complaint “undoubtedly false” and known to be so, the standard for determining whether a pleading is a sham. Menke v. Southland Specialties Corp., 637 So.2d 285, 286 (Fla. 2d DCA 1994).
In this lawsuit plaintiff filed an affidavit in support of a motion for prejudgment writ of attachment stating in relevant part:
3. Pursuant to the wire transfers between myself and Defendant, The Patsy Blackman Family Trust a/k/a PBF Trust by and through its known Trustees Noel Oliver Yorke and Diane Isobel Yorke, a true and correct copy of which are attached as exhibits to the Amended Complaint, I am owed $865,000.00.
4. The money wired from myself to The PBF Trust was intended to purchase stock in a company named Medi-bar Medical Industries, Inc. To date, the money has never been invested by The PBF Trust into Medibar Medical Industries, Inc. stock.
5. Defendants debt to Plaintiff is actually due and is unpaid.
Fifteen months later plaintiff filed an affidavit in the foreclosure case containing similar statements:
3. I transferred a net total of $865,000 from my bank account in New Jersey to the PBF Trust in the Cayman Islands on May 27 and May 28, 1993, believing that I was making a legitimate investment. Soon thereafter, Mr. Blackman and his cohorts directed the Trustees of the PBF Trust to divert these funds from their intended purpose.
Both affidavits stated that plaintiffs money was diverted to improve Black-man’s home in Coral Springs and “other expenditures” or “other obligations” of Alan Blackman.
The trial court found these two affidavits contradictory, noting that the first was filed in order to obtain a prejudgment writ of attachment, while the second was filed in the foreclosure in an attempt to gain priority over a prior purchase money mortgage. We are unable to find any inconsistencies between the two affidavits. Nor do appellees point out any inconsistencies in their brief.
Appellees rely on inconsistencies between the affidavits and the third amended complaint, which added additional parties and was more specific as to the facts. In that complaint it was alleged that Alan Blackman asked plaintiff to “invest additional funds” in Medibar, but plaintiff initially refused. The complaint goes on to state:
17. Alan Blackman, after plaintiff Furst refused to invest in Medibar, insisted further and continued to insist on obtaining money from plaintiff, and Mr. Blackman asked plaintiff Furst to lend the money through the Trust. Alan Blackman stated, represented, and assured Mr. Furst that the loan would be for a short term, for no longer than 90 to 120 days, that the money would be repaid in full, and that interest on the money would be paid, at “prime plus 5 percent,” which at the time constituted substantial interest. Alan Blackman further stated, represented and assured Mr. Furst that the loan would be secured by Medibar stock and by all of Mr. Blackman’s assets and the assets of the Trust.
[[Image here]]
19. At the time, unbeknownst to the plaintiff, Mr. Blackman intended to mislead Mr. Furst as to the purpose of the loan and his request to the plaintiff for *225 funds. Specifically, Mr. Blackman had no intention whatsoever of investing Mr. Furst’s funds in Medibar or of repaying Mr. Furst’s loan, and intended instead to misappropriate for himself, his family, the Trust and the Trust’s trustees, all the funds that Mr. Furst would provide to Mr. Blackman and the Trust the full proceeds of Mr. Furst’s loan. Mr. Blackman did not disclose to Mr. Furst Mr. Blackman’s true intentions of the real reason for his solicitation of funds from Mr. Furst and for the loan and funds that he asked Mr. Furst to provide. Instead, Mr. Blackman misrepresented to Mr. Furst that the money and loan would be fully secured and repaid to Mr. Furst with substantial interest, in order to induce Mr. Furst to transfer funds to Mr. Blackman or someone owned or controlled by Mr. Blackman, namely, the Trust.
Prior to the motion resulting in the order appealed in this case the defendants moved to strike the plaintiffs pleadings as sham because of the inconsistencies between the first complaint alleging the funds were to be invested and the third amended complaint alleging a loan. The court granted that motion and dismissed the third amended complaint with prejudice without giving reasons. We reversed that order in Furst v. Blackman, 744 So.2d 1222 (Fla. 4th DCA 1999) for procedural deficiencies. On remand defendants moved to strike the complaint for “fraud against the court,” also asserting that plaintiffs claims were barred by “judicial estoppel.” It is the order granting that motion and dismissing with prejudice, after an evidentiary hearing, which we now review.
We conclude that the cases relied on by the trial court are distinguishable. In one of those cases, Cox v. Burke, 706 So.2d 48, 47 (Fla. 5th DCA 1998), plaintiff had given in discovery false sworn answers as to.whether she had ever used any other name, whether she had a driver’s license, whether she used a false social security number, and most significantly, whether she had prior fractures or injuries before injuring herself in that case. The appellate court affirmed because she had clearly given false answers in sworn discovery “calculated to evade or stymy discovery on issues central to her case.”
In another case cited by the trial court, Savino v. Florida Drive In Theatre Management, 697 So.2d 1011 (Fla. 4th DCA 1997), plaintiffs personal injury suit seeking compensation for brain damage was dismissed because of his fraudulent misrepresentation that he had a master’s degree in engineering which he supported with a fake diploma.
In the present case, unlike in Cox and Savino, plaintiff did not, so far as this record shows, lie under oath. The' only two sworn statements, the affidavits, were not inconsistent.
Defendants argue that the allegations in the third amended complaint were egregious because plaintiff, in changing the facts to allege a loan rather than an investment, was attempting to avoid the consequences of the fact that Medibar had become insolvent. If Blackman had invested plaintiffs funds in Medibar in return for stock in Medibar, defendants argue, the stock would have become worthless in any event.
The dismissal with prejudice was entered, as we noted earlier, on a rule 1.150 motion to strike sham pleading. A sham pleading is one which is “undoubtedly false” and known to be so to the party preparing it. Menke, 637 So.2d at 286. In reviewing a motion to strike a pleading as sham all doubts are to be resolved in favor of the pleading. Id.
*226 We conclude that the third amended complaint was not a sham under these standards. Although plaintiffs affidavits did not say that this was a loan, but rather referred to this as an investment, neither of the affidavits said that plaintiff was to be issued stock in Medibar. In one of the affidavits, as noted above, it was stated that this was a debt which was due and unpaid. The term “investment,” used in the affidavits, is not entirely incompatible with a loan. The “investment” could have been for the purpose of earning interest from a loan or for appreciation in value of stock in Medibar.
Nor do we agree with appellee that plaintiff was barred by estoppel. The party claiming estoppel must have been misled and changed positions. Chase & Co. v. Little, 116 Fla. 667, 156 So. 609 (1934); Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061 (Fla.2001). There was no reliance in this case.
We therefore reverse.
FARMER and MAY, JJ., concur.