715 So.2d 1050 (1998)
Jeanne L. HUDLETT and William C. Player, Appellants,
v.
Freda SANDERSON, Appellee.
No. 96-3729.
District Court of Appeal of Florida, Fourth District.
July 29, 1998.
Rehearing Denied September 8, 1998.
Keith F. Backer of Backer Law Firm, P.A., Boca Raton, for appellants.
Thomas D. DeCarlo of Thomas D. DeCarlo, P.A., West Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellants, cross-defendants in this Palm Beach County case, appeal a summary judgment foreclosing a mortgage on Broward County property and awarding appellee money judgments on certain notes and guaranties. We reverse.
In June, 1994, Coventry Place, Inc., a corporate entity in which appellee, or her husband, or both were principals, sold certain real property in Palm Beach County (the "Coventry property") to Bee Bee Medical Center, Inc. ("Bee Bee"). The purchase price was $700,000, of which $100,000 was paid in cash. Rather than the more conventional arrangement of a purchase money note and mortgage taken back by the seller for the balance, the financing here was uniquely structured. It involved three notes, each secured by a separate mortgage. Bee Bee executed a note for $225,000 to appellee (the"Coventry note"), which was secured by a second mortgage on the Coventry property (the "Coventry mortgage").[1] Bee Bee also executed a note to appellee for $275,000 (the "Ft. Myers note"), secured by a second mortgage on property owned by Bee Bee in Lee County (the "Ft. Myers mortgage"). Appellant Hudlett executed a note to appellee for $100,000 (the "Margate note"), secured by a second mortgage on property owned by Hudlett in Broward County (the "Margate mortgage").[2] *1051 Appellee was the mortgagee in each of the three mortgages securing her notes. Those three notes and mortgages were cross-collateralized and cross-defaulted such that all became in default if there was a default in any one of the notes and mortgages, or any one of the first mortgages encumbering the various properties.
As additional security, and as a condition for appellee accepting the three notes and mortgages, there were guaranties separately executed running to the holder of the notes and mortgages. Bee Bee executed a guaranty of the Margate note and mortgage; Mr. Feldman, president of Bee Bee (and not a party to this appeal), executed a guaranty of each of the notes and mortgages, as did appellant Player; Ms. Hudlett executed a guaranty of the Coventry and Ft. Myers notes and mortgages, but her guaranty was limited to $175,000 principal plus interest and charges. Each guaranty (a) provided in exquisite detail for the guarantor's unconditional and irrevocable guaranty of payment of all sums due under the described notes without regard to any impairment of the collateral by the guarantee; (b) imposed liability on the guarantor as primary, direct and immediate, and provided that the obligation of the Guarantor was unconditional, irrespective of the genuineness, validity, regularity or enforceability of the note or other loan instrument or any other circumstance that might otherwise constitute a legal or equitable discharge of a surety or guarantor; (c) provided that the guarantor expressly waived any requirement that the guarantee marshall the security in any particular order, or exhaust any remedies according to any priority; (d) contained the guarantor's express agreement that the holder of the notes and mortgages had absolute and sole discretion without notice to or assent of the guarantor, and, without in any way affecting, releasing or impairing the obligations and liabilities of guarantor, to substitute, exchange, release or make other disposition of all or any part of the collateral securing the notes.
The notes and mortgages went into default when payments were not made. The holder of the first mortgage on the Coventry property filed this suit for foreclosure. Appellee, as holder of the second mortgage on the Coventry property, and Bee Bee, the owner, were made defendants. In due course appellee filed a cross-claim against Bee Bee, and also brought in both appellants (and others) as cross-defendants. Relevant to appellants, appellee sought (1) to foreclose her second mortgage on the Coventry property, (2) to foreclose the Margate mortgage executed by appellant Hudlett which encumbered only real property in Broward County, (3) to obtain a money judgment against Ms. Hudlett for the amount claimed to be due on both the Margate note and the Ft. Myers note, and (4) to obtain a money judgment against Mr. Player for the amount claimed to be due on both the Margate note and the Ft. Myers note.
Before appellants had served an answer to the cross-claim, the plaintiff obtained a summary final judgment of foreclosure of the first mortgage and the Coventry property was noticed for clerk's sale. However, the sale was not held as noticed, and soon thereafter the attorney for appellee filed a partial release of the Notice of Lis Pendens on the Coventry property.[3] Appellants then served their answer to the cross-claim, which included nine affirmative defenses.[4] In fairness to the learned trial court, the affirmative defenses suffered from a woeful lack of artfulness. Nonetheless, with the chaff brushed aside we find several to be marginally sufficient. However, they were found not to be by the court, which proceeded to enter summary *1052 judgment for appellee on all counts against appellants, i.e., foreclosure of the Margate mortgage and entry of a money judgment against appellant Hudlett for $411,324.15[5] and a money judgment against appellant Player for $511,554.15.[6]
The substance of appellants' first affirmative defense is that although the transaction was structured so as to appear to be three separate "loans," it was in fact a single transaction and a single "loan"; that there was an agreement between appellee and the appellants that the Margate note and mortgage and the Ft. Myers note and mortgage were given solely as collateral to be looked to only if appellee failed to receive the unpaid balance of the Coventry property purchase price; that appellee, by acquiring title to the Coventry Place property through conveyance from Bee Bee after this suit was filed, had been paid in full or substantially so due to the equity in the Coventry property; and that appellee should recover from appellants, if at all, only that part of the purchase price, with interest and charges, that she had not already been repaid. The fourth affirmative defense was an abbreviated version of the first. The fifth affirmative defense is that appellee breached the terms of the closing agreement by her failure to accept as substitute collateral for the Ft. Myers note certain real property in Iowa which the parties had agreed would be acceptable under certain conditions. The seventh affirmative defense was that Coventry Place, Inc., hindered Bee Bee's ability to develop the Coventry property, and that such conduct demonstrated a breach of its implied covenant of good faith and fair dealing. Notwithstanding appellee's argument to the trial court as well as here that these affirmative defenses are contrary to or refuted by the language of the loan documents, we find that there are reasonable inferences to be drawn from the documents, as well as the manner in which the entire transaction was structured, to support one or more of these affirmative defenses. Under principles too well established to require citation of supporting authority, the existence of factual issues, or even conflicting inferences reasonably to be drawn from the same facts, makes summary judgment not appropriate.
Appellants' third affirmative defense pleads the court's lack of subject matter jurisdiction to foreclose on the Margate mortgage which encumbered real property lying only in Broward county. A mortgage foreclosure action is a local action and must be brought in the county where the land lies. Georgia Cas. Co. v. O'Donnell, 147 So. 267, 268, 109 Fla. 290, 292 (1933). See also, Tavernier Towne Assocs. v. Eagle Nat'l Bank of Miami, 593 So.2d 306 (Fla. 3d DCA 1992); Board of Trustees of Internal Improvement Trust Fund of State v. Mobil Oil Corp., 455 So.2d 412 (Fla. 2d DCA 1984), modified, Coastal Petroleum Co. v. American Cyanamid Co., 492 So.2d 339 (Fla.1986); Cohen v. Century Ventures, Inc., 163 So.2d 799 (Fla. 2d DCA 1964). The local action rule is one of subject matter jurisdiction, not venue, and subject matter jurisdiction cannot be conferred by waiver or consent. Board of Trustees of Internal Improvement Trust Fund of State v. Mobil Oil Corp.
The exception to this rule, found in Florida Statute § 702.04 (1995), provides that when a mortgage encumbers lands in two or more counties a foreclosure of the mortgage may be brought in any of such counties. That exception is not applicable to the Margate mortgage[7] which on its face shows it encumbers only land in Broward County.
The Partial Summary Final Judgment entered October 2, 1996, is reversed and this cause is remanded for further proceedings not inconsistent with this opinion. Upon remand the court should dismiss without prejudice Count II of the appellee's cross-claim *1053 which sought to foreclose on the Margate mortgage.
REVERSED AND REMANDED.
DELL and GROSS, JJ., concur.
NOTES
[1] The loan documents required that Bee Bee place a first mortgage on the Coventry property to secure a note for $375,000 to a third party lender, with the proceeds of the $375,000 note and mortgage delivered to the trust account of appellee's lawyer. Although this mortgage states on its face that it is a Purchase Money Mortgage, what amount was received as proceeds from this note, and by whom, is not shown in the record. It was the foreclosure of this mortgage which initiated the instant suit. The complaint alleged that the principal balance was $33,500.
[2] The Coventry Note and the Ft. Myers note each state that "The principal amount of the Loan evidenced by this Note is a purchase money loan and shall be utilized by Maker to purchase the [Palm Beach Property]". The Margate Note does not contain an equivalent notation.
[3] Somewhere in this time frame Bee Bee conveyed the Coventry property to appellee or her designee, and appellee and her husband gave Bee Bee a Covenant Not to Sue on the Coventry Note and Mortgage and the Margate Note and Mortgage.
[4] The second, sixth and ninth were legally insufficient; the eighth was factually refuted by the loan documents; only the first, third, fourth, fifth and seventh affirmative defenses were both legally sufficient and supported by affidavits adequately to present factual issues.
[5] $136,352.99 as maker of the Margate Note, and 274,971.16 as guarantor of the Ft. Myers Note.
[6] This amount appears to contain a mathematical error; its amount was intended to be the total of $136,352.99 as guarantor of the Margate Note, and $374,971.16 as guarantor of the Ft. Myers Note.
[7] With commendable candor appellee's counsel conceded this point on oral argument.