STEVENSON, J.
The instant appeal arises from a simple sale of real estate, which was financed in a very complicated way. In this foreclosure action, the trial judge found that appellant/seller, Freda Sanderson, had in essence accepted a deed in lieu of foreclosure and that title to the land and the mortgage merged, extinguishing all mortgages, debts, and guaranties, including those executed by defendant, Jeanne Hudlett. Final summary judgment was entered in favor of Hudlett and against Sanderson. On appeal, we write only to address Sander-son’s claim that the trial court incorrectly applied the doctrine of merger. We find merit in Sanderson’s argument and reverse.
Freda and Owen Mark Sanderson formed a corporation called “Coventry Place” for the purpose of developing real property. To that end, Coventry Place purchased a five-acre townhouse project. According to Mr. Sanderson, in late 1993, he was approached by Jeanne Hudlett and William Player, husband and wife, concerning the possible purchase of two Coventry Place units and the remaining land. Hudlett and Player brought in a third person, Alan Feldman. In early 1994, Coventry Place entered into a sales contract with Bee Bee Medical Center, Inc. The suggestion in the record is that Bee Bee Medical is actually Feldman, Player, and Hudlett.
The purchase price for the Coventry Place property was $700,000. Bee Bee Medical paid $100,000 in cash; the remainder was financed by three notes, each secured by a separate mortgage. First, Bee Bee Medical signed a promissory note in *847 the amount of $225,000 in favor of Freda Sanderson, secured by a second mortgage on the Coventry Place property. Second, Bee Bee Medical executed a note in favor of Sanderson in the amount of $275,000, secured by a second mortgage on real property located in Ft. Myers. When title problems arose with the Ft. Myers property, a mortgage on real property in Iowa owned by Feldman was substituted. Third, Hudlett signed a promissory note in favor of Sanderson, secured by a second mortgage on real property located in Mar-gate, Florida. In addition, Feldman and Player executed a guaranty of each note and mortgage, and Hudlett executed a guaranty of the Coventry Place and Iowa notes and mortgages, limited to $175,000 of the loan amount and the interest thereon. Under the terms of the documents, all became in default if there was a default on any one.
This house of cards began to fall when timely payment was not made on the first mortgage on the Coventry Place property. The holder of that mortgage, Mark Lan-ger, filed a foreclosure suit in Palm Beach County (case number CL 95-7392 AE) and named Freda Sanderson and Bee Bee Medical as defendants. Sanderson then filed a cross-claim against Bee Bee Medical and brought defendants Hudlett and Player into the litigation. Sanderson sought to foreclose her second mortgage on the Coventry Place property, to foreclose the Margate mortgage, and to obtain a money judgment against Hudlett and Player for the amounts due on the Mar-gate and Iowa properties notes. The trial court entered summary judgment in favor of Sanderson on all counts and Hudlett appealed. On appeal, this court found that there were genuine issues of material fact on a number of the affirmative defenses raised and that summary judgment was improper. See Hudlett v. Sanderson, 715 So.2d 1050 (Fla. 4th DCA 1998). In addition, the court found merit in Hudlett’s contention that the Palm Beach County court lacked jurisdiction to foreclose on real property located solely within Bro-ward County and ordered that claim dismissed.
As a consequence of the dismissal of the action to foreclose on the Margate property, Sanderson initiated a separate lawsuit against Hudlett in Broward County (case number CACE 99-11952 09); the instant appeal stems primarily from this Broward County suit. In this Broward County suit, Sanderson sought to (1) enforce Hudlett’s guaranty; (2) enforce the note secured by the mortgage on the Margate property; and (3) foreclose the mortgage on the Mar-gate property. To make matters more difficult, during the pendency of the Palm Beach County action, Bee Bee Medical had conveyed the vacant land portion of the Coventry Place Property to a third party, Edward Hanson.[1]
At the trial below, Mr. Sanderson explained that the transfer of the vacant land by Bee Bee Medical to Hanson was part of a deal that he and his wife had made with Hanson. Hanson and his wife owned a home in Palm Beach and Sanderson and his wife owned a home in Palm Beach. The Sandersons and Hansons agreed to swap residences. The Hansons’ home, however, was valued at considerably more than the Sandersons’. Hanson developed real property in Virginia and was looking for more land. Sanderson called Feldman and asked if Bee Bee Medical would be willing to convey the Coventry Place vacant land to Hanson. The difference in *848 values between the Sanderson and Hanson homes was to be made up by Bee Bee Medical’s conveyance of the vacant land to Hanson. The Sandersons’ attorney represented that the land was worth approximately $270,000 and Sanderson testified that, by this time, the note on the Coventry Place property had been substantially paid .down. According to Mr. Sanderson, Hanson took the vacant land subject to the Sandersons’ mortgage on the same. In exchange for Bee Bee Medical’s conveying the vacant land to Hanson, the Sandersons gave Bee Bee Medical and Feldman a covenant not to sue. And, after all of this, the Sandersons agreed to subordinate their mortgage and permit Hanson to give a first mortgage to a third party. Hanson defaulted on the first mortgage.
At the hearing, the Sandersons’ attorney argued that, in essence, Bee Bee Medical had deeded the property back to the Sand-ersons in lieu of the Sandersons foreclosing their mortgage on the Coventry Place property. Instead of deeding the property to Sanderson and Sanderson then deeding it to Hanson, Bee Bee Medical simply deeded it to Hanson directly. The Sander-sons’ attorney conceded that Hudlett was entitled to a credit of $270,000, representing the value of the vacant land transferred to Hanson for the benefit of the Sandersons; nonetheless, he contended that Hudlett remained liable on her $175,000 guaranty. According to the Sandersons’ attorney, a total of $310,000 was owed (the principal on the Coventry Place note was $225,000, plus the $40,000 that the Sandersons were required to spend to redeem the first mortgage on the property, plus the accrued interest) and, thus, even if Hudlett was credited $270,000 for the value of the vacant land, there was still a deficiency and it was this amount that the Sandersons were seeking to recover. Ultimately, the judge ruled that when the Sandersons accepted the deed to the property in lieu of foreclosure (via the transfer of the property from Bee Bee Medical to Hanson), “there was a merger of both estates in Plaintiff, and, as a matter of law, all the mortgages, debts, guaranties, and liabilities associated with said transaction were extinguished, satisfied and discharged.” Judge Andrews ordered the note and mortgage on the Margate property discharged, absolved Hudlett of liability as guarantor or surety on any of the notes, mortgages, or guaranties, and entered judgment in favor of Hudlett. Then, Judge Wessel in the Palm Beach County action entered judgment in favor of Hudlett and Player, finding that the facts and causes of action were identical to those in the Broward County case and directing that any further proceedings be consolidated with the Broward action and transferred to that county. This case represents the consolidated appeals of both final orders.
“[A] transfer of the interest of a mortgagor in mortgaged property to a mortgagee generally operates as a merger of the legal and equitable estates which results in a discharge of the mortgage and a satisfaction of the debt.” Gourley v. Wollam, 348 So.2d 1218, 1220 (Fla. 4th DCA 1977).
But this is not always and necessarily the result. Whether it is or not, depends upon the intention of the person in whom the interests are united, and that intention is to be determined by his declarations at the time, or, in the absence of these, by his interest, as shown in the condition of things then existing, or by the attending circumstances. When there is no evidence of the intention of the owner in uniting the legal and equitable estates in himself, it is proper to presume that he intended that effect which is the most beneficial to him.
Jackson v. Relf, 26 Fla. 465, 8 So. 184, 185 (1890), quoted in Gourley, 348 So.2d at 1220. “There can be no merger at law, *849 without a union of titles in the same person; nor, in equity unless, also, there is an express or presumed intention on the part of those concerned in the transaction that it should operate as a merger.” Polk Bond & Mortgage Co. v. Dwiggins, 109 Fla. 443, 147 So. 855, 857 (1933). And, it is the mortgagor’s burden to establish that the mortgagee intended the merger and release of the mortgage. Gourley, 348 So.2d at 1220.
Returning to the instant case, Judge Andrews certainly seemed aware that Sanderson’s intent was the critical issue in assessing whether there was a merger of the estates and, as a consequence, extin-guishment of the associated debts and liabilities:
7.... [I]t was the clear intent of Plaintiff for the two estates, namely plaintiffs interest in the mortgage and her interest in the property, to merge. The Plaintiffs husband testified, and their counsel argued that said transfer of property to third party ... was a shortcut or accommodation for convenience, to avoid the necessity of first transferring the subject property back to Plaintiff and then for the Plaintiff to transfer her merged interests to Hanson.
8. Furthermore, the clear intent of Plaintiff to merge the two estates was demonstrated by the fact that she received the ultimate benefit from the transfer of the subject property....
These findings, however, address only whether Sanderson intended that the property actually be returned or conveyed to her, despite the reality that it was actually conveyed to Hanson. The salient issue here, though, is whether Sanderson intended that the encumbrances on the land be wiped out. See Jackson, 8 So. at 185 (refusing to find merger where mortgagee had purchased property to prevent it from being sold at a tax sale and stating, “[ujnder such circumstances it would be extremely unreasonable to infer an intention to extinguish his mortgage ”)(emphasis added); Janus Props., Inc. v. First Fla. Bank, N.A., 546 So.2d 785 (Fla. 2d DCA 1989)(affirming the trial court’s finding that there had been a merger of the two estates in the First Florida Bank when the mortgagors/purchasers conveyed the property to the bank and the bank executed and recorded a satisfaction of its mortgage).
All of the evidence before the trial judge suggested that Sanderson did not have the intent that the estates merge and that the associated debts be deemed satisfied. First, assuming that the vacant land was worth $270,000,[2] receipt of such amount would not have made Sanderson whole. Consequently, it would be contrary to Sanderson’s best interests to wipe out her mortgage and the related guaranties. Second, the mortgagor’s husband testified that Hanson took the vacant land subject to Sanderson’s mortgage. Third, in exchange for Bee Bee Medical transferring the vacant land to Hanson, Sanderson gave Bee Bee Medical not a release or any documentation stating that the note and mortgage were deemed satisfied or discharged, but a covenant not to sue Bee Bee Medical or Feldman. See Rosen v. Fla. Ins. Guar. Ass’n, 802 So.2d 291, 295 (Fla.2001)(“ ‘A release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers. A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to *850 assert any rights grounded thereon against a particular covenantee.’ ”)(quoting Atl. Coast Line R.R. v. Boone, 85 So.2d 834, 843 (Fla.1956))[3]; see also Paul E. RobeRts, A.L.I. — A.B.A. ContinuiNG Legal Educ., Deeds in Lieu of FORECLOSURE (July 17,1989)(recognizing the possibility of non-merger with a deed in lieu of foreclosure and suggesting that a covenant not to sue, rather than a release, may be utilized to preserve the mortgage). Under these circumstances, we must conclude that the trial judge erred in entering summary judgment finding that there was a merger of estates in Sanderson such that all debts and liabilities associated with the Coventry Place property were discharged. Accordingly, we reverse the final judgments in both the Broward and Palm Beach County [4] cases and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
. POLEN, C.J., and TAYLOR, J., concur.

. The discussion at the trial below suggested that Bee Bee Medical had already sold the developed units portion of the Coventry Place property, that Sanderson had provided Bee Bee Medical a release with respect to those units, and that the proceeds from the sale of the units went to the first mortgage holder, Langer.

. The only "evidence” on this issue was Sand-erson’s attorney's representation to that effect during argument to the judge.

. The fact that, here, Sanderson gave Bee Bee Medical and Feldman a covenant not to sue rather than a release distinguishes the instant case from the facts present in Prigal v. Kearn, 557 So.2d 647 (Fla. 4th DCA 1990), relied upon heavily in Hudlett's memorandum of law, which was incorporated by reference into Judge Andrews' final judgment.

. The final judgment in the Palm Beach County action rested entirely upon the judgment entered by Judge Andrews in the Bro-ward County case.