OPINION OF THE COURT
Peter P. Cusick, J.
The City’s application, under the Nuisance Abatement Law *598 (Administrative Code of City of NY § 7-701 et seq.), to close the subject premises based upon an alleged violation of the adult use provisions of the New York City Zoning Resolution, as amended, is denied.
Although the “entertainment” provided by the subject premises involves erotica, there is no contention that it is legally obscene. This form of expression or “speech”, therefore, is fully protected from unjustified governmental interference by the First and Fourteenth Amendments to the United States Constitution and by article I, § 8 of the New York State Constitution (see, e.g., Miller v California, 413 US 15; Jenkins v Georgia, 418 US 153; Matter of Town of Islip v Caviglia, 73 NY2d 544). Since zoning laws, such as the Amended Zoning Resolution at issue here, target the secondary effects of “adult establishments” rather than the content of the “speech” involved, zoning laws are considered content-neutral restrictions and are constitutionally permissible so long as they are designed to serve a substantial governmental interest and do not unreasonably limit avenues of communication (Renton v Playtime Theatres, 475 US 41, 46).
At issue here is the application of New York City’s Amended Zoning Resolution which restricts the location of adult establishments. In October of 1995 the New York City Council adopted text amendment N950384 ZRY (the Amended Zoning Resolution) thereby adding special provisions to the Zoning Resolution to ameliorate the negative social consequences of proliferating “adult establishments”. The Amended Zoning Resolution did not ban “adult establishments” outright, but rather, limited the areas of the City in which they could be located.
There is no dispute that the subject premises is an “adult establishment” as defined in section 12-10 of the Amended Zoning Resolution nor that the subject premises is located in area “M” of the Special South Richmond zoning district, a special purpose district which is primarily an Ml-1 light manufacturing district. The City contends that the subject premises violates section 42-01 (a) of the Amended Zoning Resolution. That section prohibits “adult establishments” from being located “in a [m] anufacturing [d]istrict in which residences * * * are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.” Since residential use is permitted in the special South Richmond zoning district by authorization of the City Planning Commis *599 sion pursuant to section 107-69 of the Zoning Resolution, the City contends the subject premises violates that Amended Zoning Resolution.
In Stringfellow’s of N. Y. v City of New York (171 Misc 2d 376, 390, affd 241 AD2d 360, affd 91 NY2d 382) the City Planning Commission, to meet the constitutional requirement of “reasonable alternative avenues of communication” (Renton v Playtime Theatres, supra, at 50) and “ample space available for adult uses” (Matter of Town of lslip v Caviglia, supra, at 555), presented “five paradigm areas, one from each borough, where adult establishments presently exist and which will permit adult establishments under the Amended Zoning Resolution.” In upholding the constitutionality of the Amended Zoning Resolution, the Court of Appeals (Stringfellow’s of N. Y. v City of New York, 91 NY2d 382, 395) noted the Supreme Court’s view (Diamond, J.) that the City “had sufficiently demonstrated that the number of potential relocation sites under the Amended Zoning Resolution was more than adequate to accommodate the existing number of [adult use] businesses.” It is undisputed that the subject premises is situated within “[t]he Staten Island paradigm district” (Stringfellow’s of N. Y. v City of New York, 171 Misc 2d 376, 391), and because the subject premises is situated within an area previously identified "by the City in a legal proceeding as an area in which “adult establishments” could operate under the Amended Zoning Resolution, defendants maintain that the City is judicially estopped from now assuming a contrary position.
The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken by that party in the same or some earlier legal proceeding. Judicial estoppel differs from equitable estoppel in that equitable estoppel focuses on the relationship between the parties, while judicial estoppel focuses on the relationship between a litigant and the judicial system. As the Appellate Division, Second Department, recently observed in Ford Motor Credit Co. v Colonial Funding Corp. (215 AD2d 435, 436): “Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed (see, Prudential Home Mtge. Co. v Neildan Constr. Corp., 209 AD2d 394; Piedra v Vanover, 174 AD2d 191, 197; Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 594). ‘The *600 doctrine rests upon the principle that a litigant “should not be permitted * * * to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise” ’ (Environmental Concern v Larchwood Constr. Corp., supra, at 593, quoting Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv L Rev 1132). The doctrine is invoked to estop parties from adopting such contrary positions because the judicial system ‘cannot tolerate this “playing ‘fast and loose with the courts’ ” ’ (Environmental Concern v Larchwood Constr. Corp., supra, at 594, quoting Scarano v Central Ry. Co., 203 F2d 510, 513).” While equitable estoppel against governmental entities is a “rare exception” and “not available to preclude a municipality from enforcing the provisions of its zoning laws” (Matter of Parkview Assocs. v City of New York, 71 NY2d 274, 279, 282, cert denied 488 US 801), judicial estoppel was recently used to estop the City from changing its position regarding the criteria to be considered in determining whether a particular business constitutes an “adult establishment” or “adult bookstore” under the Amended Zoning Resolution (City of New York v Show World, 178 Misc 2d 812). Here, too, judicial estoppel precludes the City from changing the position it took in String fellow’s (supra), that “adult establishments” could be located in the zoning district in which the subject premises are situated.
Moreover, section 42-01 (a) of the Amended Zoning Resolution prohibits “adult establishments” from being located “in a [m] anufacturing [district in which residences * * * are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.” Defendants contend that residences are “authorized” in any manufacturing district if a variance is granted. A “use variance” permits a use of land which is proscribed by a zoning ordinance (Matter of Reed v Board of Stds. & Appeals, 255 NY 126). It is authority to use land in a manner forbidden by a zoning ordinance, a nonconforming use, while a “special permit” is authority to use land as expressly permitted by a zoning ordinance. Despite the difference between a variance and a special permit, the City does not dispute the defendants’ contention that residences are permitted by variance or special permit in any manufacturing district. If defendants’ contention is valid, then despite Stringfellow’s (supra), the constitutionality of the Amended Zoning Resolution would be suspect due to the lack of adequate alternative locations (see, Matter of Town of lslip v Caviglia, 73 *601 NY2d 544, supra', Renton v Playtime Theatres, 475 US 41, supra).
Additionally, although residences might be allowed in the zoning district in which the subject premises is situated, the authority for such residences is strictly proscribed. Zoning Resolution § 107-69, which authorizes residences in area M where the subject premises is located, specifically states that “the residential use shall not adversely affect commercial or manufacturing uses in the Special District” (Zoning Resolution § 107-69 [c] [3]). Interpreting the Amended Zoning Resolution as the City does would render that section of the Zoning Resolution meaningless, and it is the accepted rule that all parts of a statute or ordinance are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided (see, Matter of Albano v Kirby, 36 NY2d 526, 530). An existing “adult establishment” use, therefore, should not be affected by an informed and voluntary decision to locate a residence in this special district.
Accordingly, it is ordered that the City’s application, under the Nuisance Abatement Law, to close the subject premises based upon an alleged violation of the adult use provisions of the Amended Zoning Resolution is denied; and it is further ordered that the Clerk is directed to enter judgment accordingly.