540 S.E.2d 474

**Joseph Lee QUINN, Appellant,**

v.

**The SHARON CORPORATION, Sharon Quinn, Dennis Baker, Respondent.**

**No. 3262.**

Court of Appeals of South Carolina.

Submitted Oct. 9, 2000.

Decided Nov. 27, 2000.

Rehearing Denied Jan. 29, 2001.

---

**27.** 7 U.S.C.A. § 1502(a) (1999).

J. Falkner Wilkes, of Meglic & Wilkes, of Greenville, for appellant.

D. Denby Davenport, of Greenville, for respondent.

HUFF, Judge:

Joseph Lee Quinn brought an action against the Sharon Corporation, his daughter, Sharon Quinn, and Sharon's husband, Dennis Baker, seeking affirmation of his ownership of all of the issued and outstanding stock of the Corporation, damages, attorney's fees and court costs against Sharon and Baker, and judgment of $272,330.82 on a promissory note.

From an order granting the Corporation, Sharon, and Baker summary judgment, Joseph appeals.[1]  We affirm.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Wilson v. Moseley,* 327 S.C. 144, 488 S.E.2d 862 (1997).  In ruling on a motion for summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Id.*

## FACTUAL/PROCEDURAL BACKGROUND

Viewing the record in the light most favorable to Joseph, the record reveals the following facts.  In August, 1976, Joseph organized the Corporation, to which he conveyed most or all of his land and wealth.  All of the 10,000 issued and outstanding shares of the Corporation were issued to Joseph. In accordance with his estate plan, Joseph transferred his shares of the Corporation to Sharon.  Sharon was elected to all offices of the corporation at one time or another.  Joseph stated in an affidavit that he explained to Sharon that he would remain the sole owner of the Corporation and she would have no interest in the Corporation until his death.

Until 1986, Joseph kept all the certificates of shares in his bank safety deposit box, to which Sharon had access.  In 1986, Sharon removed the certificates from the safety deposit box. Joseph filed a lis pendens to prevent Sharon from conveying any of the corporation's property.  As a result of the dispute with her father, Sharon endorsed the shares in blank.  Joseph stated he then returned the shares to his safety deposit box. In either 1990 or 1991, Joseph delivered the certificates to the Corporation's accountant in order to keep them with the corporate records.  After a medical scare in 1996, Joseph informed Sharon of the location of the certificates and Sharon retrieved them from the accountant.  Joseph instructed Sharon to put the certificates back in his safety deposit box, but

---

1.  Joseph does not challenge the trial court's holding that his action on the promissory note is barred by the statute of limitations.

she failed to do so. In October of 1996, Joseph attempted to terminate the employment of Sharon's husband, Dennis Baker. Thereafter, Sharon assumed control over the Corporation. Joseph filed the present action on November 19, 1996.

## LAW/ANALYSIS

Joseph argues the trial court erred in granting the Respondents summary judgment on his claims. We disagree.

The supreme court expressly adopted the doctrine of judicial estoppel, as it relates to matters of fact, in the case of *Hayne Federal Credit Union v. Bailey*, 327 S.C. 242, 489 S.E.2d 472 (1997). The doctrine precludes a party from adopting a position in conflict with one previously taken in the same or related litigation. *Id.* The purpose of the doctrine is not to protect litigants from allegedly improper or deceitful conduct by their adversaries, but to protect the integrity of the judicial process and the courts. *Id.* The supreme court explained,

> In order for the judicial process to function properly, litigants must approach it in a truthful manner. Although parties may vigorously assert their version of the facts, they may not misrepresent those facts in order to gain advantage in the process. The doctrine thus punishes those who take the truth-seeking function of the system lightly. When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him.

*Id.* at 251–52, 489 S.E.2d at 477.

In *Hayne*, the appellant contended he owned certain property by virtue of a resulting trust. The appellant had, in a previous divorce action, claimed he had no legal interest in the property and that the property was owned by his son. The court held, because the father had previously claimed his son owned the property, he was judicially estopped from later claiming ownership of the property.

In the instant case, the record shows Joseph had previously filed an answer and counterclaim dated March 16, 1992 in the case of *Charles H. Smith v. Joe L. Quinn and The Sharon Corporation*, Case No. 92–CP–23–304. There, Joseph

admitted that Sharon owned and operated the Corporation and stated he had no authority to bind the Corporation. Similarly, in a hearing held June 16, 1992 in the case of *State of South Carolina v. Joe Quinn,* Case No. 91–GS–23–7358, 7359, Joseph testified Sharon owned the Corporation. He denied owning any real estate, stocks, bonds, notes, or other valuable property.

Joseph's claim in the present action that he is the sole owner of the Corporation is in direct contravention to his assertions in the prior litigations. Were we to allow Joseph to change his position as to the facts and now claim ownership of the Corporation, "the truth-seeking function of the judicial process [would be] undermined." *Hayne,* 327 S.C. at 252, 489 S.E.2d at 477. We therefore hold Joseph's claim for ownership of the Corporation is barred by the doctrine of judicial estoppel.[2]

For the foregoing reasons, the order granting respondents summary judgment is

**AFFIRMED.**

GOOLSBY, J., concurs.

ANDERSON, J., concurring in result only in a separate opinion.

ANDERSON, Judge (concurring):

I concur in result. Judicial estoppel bars Joseph Lee Quinn's claim to sole ownership of the Sharon Corporation.

---

2. Although not ruled upon by the trial court, respondents' brief contains argument that appellant is judicially estopped from asserting he, and not his daughter, is the owner of all outstanding stock of the Corporation. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal"); *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (It is not always necessary for a respondent to present his issues and arguments to the lower court and obtain a ruling on them in order to preserve an issue for appellate review. The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment.).

## I. Definition and Purpose of Judicial Estoppel

A court must be able to rely on the statements made by the parties because truth is the bedrock of justice. Therefore, a litigant cannot "blow both hot and cold." *McDaniels v. Gen. Ins. Co. of Am.*, 1 Cal.App.2d 454, 36 P.2d 829, 832 (1934). Under the doctrine of judicial estoppel, a party that has assumed a particular position in a judicial proceeding, via its pleadings, statements, or contentions made under oath, is prohibited from adopting an inconsistent posture in subsequent proceedings. *Black's Law Dictionary* 848 (6th ed.1990) (citation omitted); 28 Am.Jur.2d Estoppel and Waiver § 74 ("The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein." (footnote omitted)); *see also City of New York v. Black Garter*, 179 Misc.2d 597, 685 N.Y.S.2d 606, 607–08 (N.Y.1999) ("Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding ... from assuming a contrary position in another action simply because his or her interests have changed.... The doctrine rests upon the principle that a litigant 'should not be permitted ... to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise.' " (citations omitted)).

The purpose of judicial estoppel is to prevent the manipulation of the judicial system by the litigants. *Case of Canavan*, 432 Mass. 304, 733 N.E.2d 1042 (2000); *see also* 31 C.J.S. *Estoppel and Waiver* § 139 (1996) ("The ... function of judicial estoppel is to protect the integrity of the judicial process ... rather than to protect litigants from allegedly improper conduct by their adversaries." (footnote omitted)). A court invokes judicial estoppel to prevent a party from changing its position over the course of judicial proceedings. 31 C.J.S. *Estoppel and Waiver* § 139 (1996) (footnote omitted). The doctrine estops a party from playing "fast-and-loose" with the courts or to trifle with the proceedings. *Id.* (footnotes omitted).

A quintessential case illustrating the efficacy and application of judicial estoppel is *Allen v. Zurich Insurance Company*, 667 F.2d 1162 (4th Cir.1982). Allen was assisting Zurich's

insured, Scruggs, in installing a mobile home when the home, which Scruggs had placed on blocks, shifted, fell, and crushed Allen's hand. Allen sued Scruggs in South Carolina state court on a negligence theory to recover for his injuries "while in the employment of the Defendant, Carl H. Scruggs...." Zurich defended Scruggs. The jury returned a verdict for Allen of $37,000, which Scruggs did not pay.

Allen then brought suit in federal court against Zurich to collect on Scruggs' automobile liability policy and alleged in the complaint he and Scruggs were joint venturers. Zurich claimed it was not liable because Allen was Scruggs' employee at the time of his injury and the policy expressly excluded coverage for bodily injury to any employee. Allen testified he thought he was Scruggs' employee when the accident occurred, but now characterized their relationship as "working together." During cross-examination, Allen admitted he had testified he was Scruggs' employee and was paid a weekly salary at the time of his injury in a South Carolina Industrial Commission hearing, in a deposition, and before the state court. A verdict was returned for Allen. Zurich moved for judgment notwithstanding the verdict on two grounds: (1) Allen's status as an employee of Scruggs was affirmatively adjudicated in state court and Allen was bound by that determination, and (2) the only reasonable inference to be drawn from the evidence presented at trial is that Allen was Scruggs' employee and acting within the scope of his employment when he was injured. The district court granted the motion on the second ground.

The Fourth Circuit affirmed the JNOV order on the grounds of judicial estoppel. "Closely related to collateral estoppel, but dissimilar in critical respects, is another principle that we conclude should preclude Allen on the dispositive issue. In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. 'Judicial estoppel' is invoked in these circumstances to prevent the party from 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Id.* at 1166. The court was persuaded the doctrine was properly applied in Allen's case. "Here is a party who, as the record conclusively shows, has earlier ... asserted a legal position

respecting his employment relationship with another that is completely at odds with the position now asserted." *Id.* at 1167. Judicial estoppel's essential function and justification is "to prevent the use of 'intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* (citation omitted).

## II. History and Recognition of the Doctrine

The doctrine of judicial estoppel is rooted in antiquity:

A party cannot ... in the course of litigation ... occupy inconsistent positions.... '[A] man shall not be allowed' in the language of the Scotch law 'to approbate and reprobate....'

If the parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them.

Melville M. Bigelow, *A Treatise on the Law of Estoppel or of Incontestable Rights* 732, 783 (Carter ed.1913) (footnotes omitted).

The doctrine first emerged in our republic in *Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39 (Tenn.1857). Douglas W. Henkin, *Judicial Estoppel: Beating Shields Into Swords and Back Again*, 139 U.Pa.L.Rev. 1711 (1991). Zimmerman purchased a failing drug business, with Hamilton, a former owner, remaining. The enterprise was later sold and Zimmerman refused to distribute any of the profits to Hamilton. Hamilton, maintaining he was a partner, not the employee Zimmerman contended, sued for his share. At trial, the evidence showed Zimmerman had admitted to third parties Hamilton was a partner, while Hamilton had frequently maintained he was nothing but a clerk. Hamilton explained his mercurial statements were attributable to his seeking to conceal his interest in the business from creditors. Additional facts demonstrated that sometime after Zimmerman's acquisition of the business, Hamilton and the other former owner had sued

Zimmerman seeking specific performance on a contract. Zimmerman's answer contained an averment, which stated, "one of the complainants [meaning Hamilton] in the bill ... was then in the house of respondent as clerk...." Zimmerman additionally filed a counterclaim. In response, Hamilton professed "he ha[d] read carefully the answer of Zimmerman, and also his bill, and believe[d] that the allegations of said answer and bill are substantially true." As a result, the court precluded Hamilton from recovering any share of the business' sale:

> [F]or all purposes of the present [lawsuit], the admission must be taken as true, without enquiring whether, as a matter of fact, it be so or not. The law as against [Hamilton], presumes that it is true; and this presumption proceeds upon the doctrine of estoppel, which from motives of public policy or expediency, will not ... suffer a man to contradict ... what ... he may have previously said or done. This doctrine is said to have its foundation in the obligation under which every man is placed to speak or act according to the truth of the case; and in the policy of the law to suppress the mischiefs from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true. [T]his doctrine applies with particular force to admissions or statements made under the sanction of an oath in the course of judicial proceedings.

*Hamilton,* 37 Tenn. (5 Sneed) at 47–48.

The doctrine of judicial estoppel is recognized by most jurisdictions. Michael D. Moberly, *Swapping Horses in Midstream: A Comparison of the Judicial Estoppel Doctrine in Arizona and Nevada,* 32 Ariz.St.L.J. 233 (2000) (citations omitted); *see also, e.g., Burch v. Grace St. Bldg. Corp.,* 168 Va. 329, 191 S.E. 672, 677 (1937) ("In Virginia, we have ... approved the general rule that a party is forbidden to assume successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory. A litigant is estopped from taking a position which is inconsistent with one previously assumed ... in the course of litigation for the same cause of action...."); *Southmark Corp. v. Trotter, Smith &*

*Jacobs,* 212 Ga.App. 454, 442 S.E.2d 265 (1994) (in its first use of the doctrine, the Georgia Court of Appeals held the plaintiff, which did not refer to any bankruptcy prepetition malpractice claim against its attorneys in its disclosure statements and reorganization plan, was judicially estopped from subsequently bringing its malpractice claim against defendants); *Chase & Co. v. Little,* 116 Fla. 667, 156 So. 609 (1934) (the Florida Supreme Court recognized judicial estoppel with citation to *Corpus Juris;* however, it found the doctrine was inapplicable to the case at bar because plaintiff did not make inconsistent statements); *Medicare Rentals, Inc. v. Advanced Srvs.,* 119 N.C.App. 767, 460 S.E.2d 361 (1995) (though the Court of Appeals reversed a trial court decision to issue a summary judgment order on the grounds of judicial estoppel, the Court impliedly acknowledged the permissiveness of the doctrine in North Carolina; however, the appellate court concluded judicial estoppel did not apply because plaintiff had not intentionally propounded inconsistent decisions in two different, but related, matters).

The South Carolina decision, which expressly embraces judicial estoppel, is *Hayne Federal Credit Union v. Bailey,* 327 S.C. 242, 489 S.E.2d 472 (1997). In *Hayne,* Father purchased a house; however, the deed was put in Son's name. Son died and devised all of his property to his wife. Father did not make a claim against Son's estate as to the property. Wife later gave a mortgage to Credit Union, using the home as security. She later filed bankruptcy. Father filed a claim with the trustee asserting he was the owner of the property. The claim was settled. The settlement statement declared that "the [Bankruptcy] Trustee will transfer the estate's interest in the real property by Trustee's deed, without warranties, to [Father]...." Soon after, Credit Union commenced a foreclosure action. Father answered and counterclaimed, contending he owned the house. On appeal, the Supreme Court ruled Father was estopped from asserting an ownership claim over the property because he had sworn in a prior divorce action he had no legal interest in the property and that Son was the owner. The Court explicitly adopted the doctrine, stating:

> In order for the judicial process to function properly, litigants must approach it in a truthful manner. Although

parties may vigorously assert their version of the facts, they may not misrepresent those facts in order to gain advantage in the process. The doctrine thus punishes those who take the truth-seeking function of the system lightly. When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him.

*Id.* at 251–52, 489 S.E.2d at 477.

While it noted some jurisdictions had expanded judicial estoppel to conclusions of law or assertions of legal theories, the *Hayne* Court held the doctrine's application applied only to inconsistent statements of fact. *Id.* at 251, 489 S.E.2d at 477 (citing *United States v. Siegel,* 472 F.Supp. 440 (N.D.Ill. 1979)).

Prior to *Hayne,* several state court cases tangentially addressed judicial estoppel as a cognizable legal principle in South Carolina. In *Boykin v. Prioleau,* 255 S.C. 437, 179 S.E.2d 599 (1971), the Supreme Court touched on the issue of the doctrine's importance to the case: "The defense of judicial estoppel has not been raised, and the facts appearing here would not support it." *Id.* at 441, 179 S.E.2d at 601. In *Zimmerman v. Central Union Bank,* 194 S.C. 518, 8 S.E.2d 359 (1940), the Court presided over a dispute between a bank's receivers and the bank. The dispositive issue was whether the Circuit Court or the state's banking board had jurisdiction over liquidation of the bank. In a prior matter, the receivers had successfully contended the banking board was empowered to govern the liquidation. In subsequent proceedings, the receivers took the opposite tack. The Court forbade the receiver's change in position by reciting a maxim promulgated by the United States Supreme Court in *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895): "[W]here a party assumes a certain position in a legal proceeding . . . he may not thereafter, simply because his interests have changed, assume a contrary position." *Id.* at 532, 8 S.E.2d at 365.

### III. Application of the Doctrine by the Courts

Judicial estoppel is an equitable concept; therefore, its application is within the discretion of the court. 31 C.J.S. *Estoppel and Waiver* § 139 (1996) (footnote omitted). ("[B]e-

cause the purpose of the doctrine is to protect the integrity of the judicial process, it is 'invoked by a court at its discretion.' " (citation omitted)). There is no fixed method or formula that courts must follow in the doctrine's application. 31 C.J.S. *Estoppel and Waiver* § 139 (1996) (footnote omitted). This flexible standard permits a judge to consider all circumstances involved. *Id.* (footnote omitted).

Five elements are required for the application of judicial estoppel:

  (1) two inconsistent positions must be taken by the same party or parties in privity with each other;

  (2) the two inconsistent positions were both made pursuant to sworn statements;

  (3) the positions must be taken in the same or related proceedings involving the same parties in privity with each other;

  (4) the inconsistency must be part of an intentional effort to mislead the court; and

  (5) the two positions must be totally inconsistent—that is, the truth of one position must necessarily preclude the veracity of the other position.

*E.g.,* 28 Am.Jur. *Estoppel and Waiver* § 74 (2000) (footnotes omitted).

As originally conceived in *Hamilton v. Zimmerman,* the doctrine of judicial estoppel was based solely on the sanctity of the oath. Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw.U.L.Rev. 1244 (1986). Under this philosophy, the fact a litigant is using the court as a forum for his inconsistent statements injures the judicial system; therefore, such abuse must be avoided under all circumstances. *Id.* Any perpetuation of untruth or misrepresentation eviscerates public confidence in the integrity of the judicial system. Boyers, *supra,* at 1252. Accordingly, whether a party was successful or not in propounding the validity of its initial position is immaterial: the party will be judicially estopped from assuming a different stance, relating to the facts, in subsequent proceedings.

In *Colleton Regional Hospital v. MRS Medical Review Systems, Inc.,* 866 F.Supp. 896 (D.S.C.1994), the federal dis-

trict court precluded a hospital from switching positions relative to the agency status of a utilization review company in a suit for breach of fiduciary duty: "A second equally compelling reason that MRS cannot be considered a fiduciary is that Plaintiffs took the opposite position, *i.e.*, that MRS is not an ERISA fiduciary, earlier in this litigation. The doctrine of judicial estoppel prevents Plaintiffs from switching positions." The hospital's initial posture was determined to be in contravention of prevailing ERISA law—in other words, the hospital did not enjoy any "prior success" from its first position. *See id.* at 901 ("Now that the court has rejected Plaintiffs' contention that [MRS was not a fiduciary], Plaintiffs assert that MRS is an ERISA fiduciary and can be sued for breach of fiduciary duty. Clearly there is a conflict in the position Plaintiffs previously took in these proceedings and the one they now take before this court. Therefore, this action is an appropriate case for the application of judicial estoppel."); *see also Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1982) (stating the imposition of judicial estoppel is "perhaps not necessarily confined to situations where the party asserting the earlier contrary position there prevailed. . . .").

## IV. Conclusion

Deceit and dishonesty are anathema of justice. "The chief security and safeguard for the purity and efficiency of the administration of justice is to be found in the proper reverence for the sanctity of an oath." *Hamilton v. Zimmerman,* 37 Tenn. (5 Sneed) 39, 48 (Tenn.1857). Judicial estoppel guarantees the protection of the judiciary from the perversion created by a party's inconsistent and untruthful averments.