THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Mary
 Seabrook,        Respondent,
 
 
 

v.

 
 
 
 Guy
 Simmons,        Appellant.
 
 
 

Appeal From Charleston County
Frances  P. Segars-Andrews, Family Court Judge

Unpublished Opinion No.
2005-UP-459
Submitted May 1, 2005  Filed July 19, 2005

AFFIRMED

 
 
 
 Kevin R. Eberle, Melissa F.
 Brown, of Charleston, for Appellant.
 Robert Papa, of Charleston,
 and Stephen Paul Bucher, of North
 Charleston, for Respondent.
 
 
 

PER CURIAM:  In this
domestic action, Guy Simmons appeals the family courts determination that he
and Mary Seabrook were married at common law.  Simmons argues the family
court erred in: (1) finding the parties were married at common law; and (2)
failing to find judicial estoppel precludes Seabrook from claiming the parties
were married at common law.  We affirm.[1]   
FACTS
Guy Simmons and Mary Seabrook had an
on-and-off relationship beginning in 1966 in the Charleston, South Carolina area.  After an initial break-up with Simmons,
Seabrook married Harold Seabrook.  In 1969, Seabrook left Harold, and she
and her three children from prior relationships moved in with her cousin. 
Seabrook and Simmons rekindled their relationship and began residing together
that same year.  The parties moved to an apartment on Norman
Street.  Shortly thereafter, the parties had an argument and Simmons left
the apartment for a brief period; however, he returned to the Norman Street
apartment in 1971, the same year that Seabrooks divorce from Harold was
finalized.  Although the Norman Street apartment was crowded, as
Seabrook had relatives staying there, Simmons and Seabrook shared a
bedroom. 
In 1972, while the couple resided at
the Norman Street apartment, the
couples first child, Guydetra, was born.  Around that time, Simmons
purchased a home at 26 Addlestone to which he moved his mother and
siblings.  Simmons received mail at the Addlestone address but remained
living with Seabrook in the Norman Street apartment.  In January 1974, the couples second
child, Mark, was born. 
Simmons and Seabrook, along with the
two children, moved to a new apartment on Fludd
Street when Guydetra was in the second grade.  The couple moved again to a
home Simmons purchased on Endo Drive three years later.  This was the couples primary
residence until the couple separated in 1999.  Seabrook still resides at
the Endo Drive
home.   
In the summer of 1998, Seabrook
filed for bankruptcy under Chapter 13 of the Bankruptcy Code.  Seabrook
indicated she was divorced in the filings.  In January 2000, Seabrook filed
for divorce from her common law marriage to Simmons.  Simmons answered
denying a common law marriage existed, and he argued judicial estoppel barred
Seabrook from alleging a common law marriage due to her assertion in her
bankruptcy filings. 
A hearing was held in family court
to determine whether a common law marriage existed.  Simmons testified that
he never resided with Seabrook or considered her his wife, and he presented
testimony from witnesses to that effect.  Numerous witnesses, including
Seabrook and the parties two children, testified that Simmons resided at the Endo
Street house with Seabrook and the children for nearly thirty years, that
Simmons maintained his clothes and the safe containing his cash there, that
Seabrook introduced Simmons as her husband, and that the parties sometimes
referred to each other as husband and wife.  When Seabrooks daughter
from a prior relationship had a family court hearing, Simmons provided an
affidavit in which he identified himself as her step-father and claimed that he
had lived with her and Seabrook for more than twenty-six years.  Simmons
directed Seabrook to pay all of his bills by signing his name on checks from his
bank accounts.  Seabrook identified Simmons as her husband or common law
husband and beneficiary on life insurance applications in 1994 and 1995. 
Although Simmons indicated that he was single in an insurance application in
1986, he identified Seabrook as his spouse and beneficiary on an insurance
application in 1987.  Simmons also applied in 1986 to change his life
insurance policy to add a spouse rider, and Seabrook signed the application as
Mary G.S. Simmons.  Further, Seabrook was identified as the daughter-in-law
and representative payee for the supplemental security income for Simmons
mother, Anna Hart.     
After the hearing, the family court
found a valid common law marriage existed and found the doctrine of judicial
estoppel to be inapplicable in the case.  The family court denied Simmons
motion to alter or amend the judgment.  This appeal followed.
STANDARD OF REVIEW
In appeals from the family court,
the appellate court has the authority to find the facts in accordance with its
view of the preponderance of the evidence.  Rutherford
v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); Owens v.
Owens, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct. App. 1996).  This
broad scope of review does not, however, require the appellate court to
disregard the findings of the family court.  Stevenson v. Stevenson,
276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  Neither is the court
required to ignore the fact the family court, which saw and heard the witnesses,
was in a better position to evaluate their credibility and assign comparative
weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 525,
280 S.E.2d 541, 541 (1981).[2]
LAW/ANALYSIS
Simmons argues the family court
erred in finding he and Seabrook were married at common law.  First,
Simmons contends the evidence does not support the family courts finding of a
valid common law marriage. Second, Simmons alleges the family court erred in
failing to find judicial estoppel precluded Seabrook from claiming the parties
were married at common law.  We find both of Simmons arguments to be
without merit.
I.  Common Law Marriage   
Simmons contends the evidence does
not support the family courts finding of a valid common law marriage. 
We disagree.
A party moving for a determination
of a common law marriage has the burden of proving the existence of a common law
marriage by the preponderance of the evidence.  Barker v. Baker, 330
S.C. 361, 369, 499 S.E.2d 503, 507 (Ct. App. 1998).  In South
Carolina, a strong but rebuttable presumption exists in favor of marriage by
cohabitation, apparently matrimonial, coupled with social acceptance over a long
period of time.  Id. at
367, 499 S.E.2d at 507. 
A common law marriage is
formed when a man and woman exhibit a present intent to enter into a marriage
contract.  Tarnowski v. Lieberman, 348 S.C. 616, 619, 560 S.E.2d
438, 440 (Ct. App. 2002).  It is essential to a common law marriage that
there shall be a mutual agreement between the parties to assume toward each
other the relation of husband and wife.  Johnson v. Johnson, 235
S.C. 542, 550, 112 S.E.2d 647, 651 (1960).  Because it is often difficult
to ascertain direct evidence of the parties mutual intent where there is no
public declaration of the contract of marriage, the existence of a common-law
marriage frequently is proved by circumstantial evidence.  Barker,
330 S.C. at 368, 499 S.E.2d at 507.  Circumstantial evidence of a common
law marriage includes where the parties have cohabitated for a period of time
and where the parties have held themselves out as husband and wife.  Id.   
The preponderance of the evidence
presented in this case supports the family courts determination that a valid
common law marriage existed between Seabrook and Simmons.  The family court
saw and heard the witnesses and was in a better position to evaluate their
credibility and assign comparative weight to their testimony.  We find no
reason to disregard the findings of the family court.  The evidence clearly
establishes that after Seabrooks 1971 divorce from Harold, the parties
intended to be married, held themselves out as married, cohabitated together for
a substantial period of time, and had two children.  Thus, under the
preponderance of the evidence standard and under the more lenient any evidence
standard, there was evidence to support the family courts finding of a common
law marriage.
II.  Judicial Estoppel
Simmons alleges the family court
erred in failing to find judicial estoppel precluded Seabrook from claiming the
parties were married at common law.  Specifically, Simmons argues the
assertion Seabrook made in her bankruptcy filings that she was divorced
precluded her from arguing the parties were married at common law.  We
disagree. 
Judicial estoppel is an equitable
concept that prevents a litigant from asserting a position inconsistent with, or
in conflict with, one the litigant has previously asserted in the same or a
related proceeding.  Hayne Fed. Credit Union v. Bailey, 327 S.C.
242, 251, 489 S.E.2d 472, 477 (1997).  Judicial estoppel is limited to
inconsistent statements of fact.  Hawkins v. Bruno Yacht Sales, 353
S.C. 31, 42, 577 S.E.2d 202, 208 (2003).  The application of judicial
estoppel is discretionary and must be determined according to the facts of each
individual case.  Carrigg v. Cannon, 347 S.C. 75, 83, 552 S.E.2d
767, 772 (Ct. App. 2001).  The purpose of the doctrine is to ensure the
integrity of the judicial process and to prevent manipulation of the judicial
system by the litigants.  Quinn v. Sharon Corp., 343 S.C. 411, 414,
540 S.E.2d 474, 475 (Ct. App. 2000).
Our state supreme court has
delineated the following necessary elements for the doctrine of judicial
estoppel to apply:

 (1) two inconsistent positions
 taken by the same party or parties in privity with one another; (2) the
 positions must be taken in the same or related proceedings involving the same
 party or parties in privity with each other; (3) the party taking the position
 must have been successful in maintaining that position and have received some
 benefit; (4) the inconsistency must be part of an intentional effort to
 mislead the court; and (5) the two positions must be totally
 inconsistent. 

Cothran v. Brown, 357 S.C.
210, 215-16, 592 S.E.2d 629, 632 (2004).
In the late 1990s, the relationship
between Seabrook and Simmons deteriorated, and Simmons spent a substantial
amount of time away from the home.  Seabrook began experiencing financial
difficulties, and she testified that she consulted Simmons about whether she
should file for bankruptcy.  According to Seabrook, Simmons told her that
he did not have to file any documents along with her bankruptcy application
because their finances were separate and they were common law divorced. 
Seabrook testified that because she did not know any better, she then put her
status as divorced on her bankruptcy filings.  Simmons testified that
because his finances were separate from Seabrooks, her filing bankruptcy did
not affect him in any way. 
Charles Summerall testified
regarding bankruptcy filings.  Sumerall stated that if Seabrook was married
at the time she filed for bankruptcy, the law required her to fill out the
section indicating the income and assets of her spouse so that the bankruptcy
court could determine her disposable income available for repaying
creditors.  However, Nathan Davis, an attorney who primarily practiced
bankruptcy law, testified that Seabrook was required to list Simmons income
and assets only if he provided a wealth of income for her support. 
He also noted that since Simmons was not a creditor of Seabrooks, her
discharge of all but five percent of her debt had no impact on him. 
In ruling on the judicial estoppel
issue, the family court found that Simmons was not affected in any way by the
payment or discharge of Seabrooks debts and that Simmons and Seabrook were
not in privity in any way with regard to the bankruptcy and this domestic
case.  The court noted that the parties relationship had
substantially deteriorated when Seabrook filed the bankruptcy case, and Seabrook
did not understand the legalities of common law marriage nor of how a common
law marriage ended.  Thus, the court held that Seabrook did not maliciously
or intentionally mislead the bankruptcy court in her filing.  The court
denied Simmons motion to dismiss based upon judicial estoppel. 
The evidence in the record supports
the family courts findings.  Seabrook testified that she believed
Simmons when he told her that they were common law divorced.  There
was no evidence that Seabrook intentionally misled the bankruptcy court when she
acted under her erroneous assumption.  Moreover, the bankruptcy action was
not related to the divorce action.  Further, we give greater weight to the
family courts findings as it viewed the witnesses and was able to judge their
credibility.  Accordingly, we find the family court did not err in denying
Simmons motion to dismiss based upon judicial estoppel.
CONCLUSION
We hold the family court correctly
found judicial estoppel does not preclude Seabrook from claiming the parties
were married at common law.  Moreover, reviewing the finding of a common
law marriage under either the preponderance of the evidence or the any evidence
standard of review, the evidence in this record clearly supports a finding the
parties were married at common law.  Therefore, the order of the family
court is hereby
AFFIRMED.
HEARN, C.J., BEATTY and SHORT, JJ.,
concur.

[1] Because oral argument would not aid the court in resolving the
issues on appeal, we decide this case without oral argument pursuant to Rule
215, SCACR. 
[2]  There is some question regarding the standard of review in
common law marriage cases.  Although the line of cases from family court
apply the traditional family court preponderance of the evidence standard of
review, a line of cases from probate court apply the legal any evidence
standard.  See Barker v. Baker, 330 S.C. 361, 370, 499 S.E.2d
503, 508 (Ct. App. 1998) (holding that in an action at law, where the existence
of a common law marriage is a question of fact, the court is bound by the lower
courts factual findings and credibility determinations); Richland Meml
Hosp. v. English, 295 S.C. 511, 513, 369 S.E.2d 395, 396 (Ct. App. 1988)
(holding the issue of common law marriage sounds in law); Weathers v. Bolt,
293 S.C. 486, 488, 361 S.E.2d 773, 774 (Ct. App. 1987) (noting that the review
in the case was limited to a determination of whether or not there was any
evidence to support the findings of the trial judge).  Thus, when applying
the probate court standard of review, we must affirm if any evidence supports
the lower courts findings.  Tarnowski v. Lieberman, 348 S.C. 616,
619, 560 S.E.2d 438, 440 (Ct. App. 2002).  In the present case, we have
applied the preponderance of the evidence standard.  However, we find the
facts in the record are such that the family court may be affirmed under either
standard.