**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA ex rel.**
**GABRIELLE M.**
**Petitioner**

**vs) No. 16-0167 (Marion County 15-F-32)**

**THE HONORABLE DAVID R. JANES,**
**JUDGE OF THE CIRCUIT COURT OF**
**THE SIXTEENTH JUDICIAL CIRCUIT,**
**AND STATE OF WEST VIRGINIA**
**Respondents**

**FILED**

**October 6, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

This is a writ of prohibition proceeding filed under the original jurisdiction of this Court by Petitioner, Gabrielle M.[1], through counsel, Frances C. Whiteman. The Petitioner seeks to have this Court prohibit enforcement of a ruling by the Circuit Court of Marion County that requires the Petitioner to turn over her psychological report to the court and State for sentencing purposes. A response in opposition to the writ was filed by the State, through counsel, Jenifer L. Pigott.

This Court has considered the parties' briefs, the appendix submitted, and the parties' oral arguments. Upon consideration of the standard of review, the Court denies the writ of prohibition. In view of prior precedent on the dispositive issue presented in this case, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Because of the sensitive nature of the facts in this case, this Court uses the initials of the affected parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)).

1

The limited record in this proceeding indicates that the Petitioner was charged,[2] on or about June 17, 2015, with two counts of child neglect creating a risk of injury, and two counts of child neglect causing injury.[3] In September of 2015, the Petitioner pled guilty to all the charges. Prior to the scheduled sentencing hearing, a psychological evaluation and risk assessment was arranged for the Petitioner by defense counsel. To facilitate the psychological assessment, the Petitioner wanted the psychologist to review the medical records of her two children, which had been generated during a prior child abuse and neglect proceeding. The Petitioner also wanted to have her attorney discuss with the psychologist the specifics of her case and other confidential information that involved the victims. The Petitioner filed a motion seeking court approval to provide the psychologist with this information. A hearing on the motion was held. The State opposed the motion. The trial court entered an order denying that part of the motion that sought to have the psychologist review the medical records of the victims. However, the trial court granted that part of the motion seeking to discuss with the psychologist the specifics of the Petitioner's case and other confidential information that involved the victims. Specifically, the order stated:

> Upon due consideration, the Court . . . does hereby ORDER that the Defendant's counsel may discuss the explanation of the charges which the Defendant pled to, with Dr. Fremouw, in written and oral form, and Counsel may provide Dr. Fremouw the police report as well as the Department of Health and Human Resources reports which were provided to counsel in a separate civil matter.

The Petitioner underwent the psychological assessment. After the Petitioner had the psychological assessment done, she refused to disclose the report to the trial court and State. A hearing was held over the Petitioner's refusal to disclose the psychological report. At the end of the hearing, the trial court ordered the Petitioner to disclose the report to the State and court. The Petitioner thereafter filed this proceeding to prevent enforcement of the disclosure order.

---

[2]It appears that the Petitioner was charged through an information after waiving the right to be prosecuted by an indictment.

[3]The victims were the Petitioner's two children.

2

Our guidelines for issuing a writ of prohibition have been set forth as follows:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

In this proceeding the Petitioner contends that disclosure of her psychological report would violate the attorney-client privilege and work product doctrine. Assuming, without deciding, that the attorney-client privilege and work product doctrine would prevent disclosure of the psychological report, we find that the doctrine of judicial estoppel prevents the application of those doctrines. *See generally In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (Bankr. E.D. Pa. 2013) (relying on judicial estoppel to prevent litigant from asserting attorney-client privilege); *Schering Corp. v. Mylan Pharm., Inc*., No. CIV.A. 09-6383 JLL, 2011 WL 3651343, at *8 (D.N.J. Aug. 18, 2011) ("Mylan's appeal with respect to work product immunity is . . . barred by the doctrine of judicial estoppel.").

We begin by noting that this Court has authority to invoke the doctrine of judicial estoppel *sua sponte*:

> We have invoked judicial estoppel, *sua sponte*, based on our consideration of three factors. First, it is generally recognized that "a court, even an appellate court, may raise [judicial] estoppel on its own motion in an appropriate case." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). *See also* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 8(c) (Supp.2012) ("[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion."). Second, where inconsistent conduct is taken that "is barred by . . . judicial estoppel, there are no triable issues of fact as a matter of law." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 39, 591 S.E.2d 870, 895 (2004). Third, the record presented in this appeal is sufficient for this Court to determine the application of the doctrine.

*Larry V. Faircloth Realty, Inc. v. Public Serv. Comm'n of W. Virginia*, 230 W. Va. 482, 740 S.E.2d 77, 82 (2013). Although judicial estoppel usually is applied in civil cases, it can be applied in a criminal case. *See Beem v. McKune*, 317 F.3d 1175, 1185 (10th Cir. 2003) ("Judicial estoppel should be universally available because its underlying purposes . . . are the same in both civil and criminal litigation – to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants.") (internal quotations and citation omitted); *United States v. Hoey*, 34 F. App'x 290, 291 (9th Cir. 2002) ("Hoey's otherwise judicially estopped contention is without merit."); *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996) ("Judicial estoppel is no less applicable in a criminal than in a civil trial."); *State v. Washington*, 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987) ("Washington's inconsistent position presents a classic case of judicial estoppel.").

The doctrine of "[j]udicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation." *In re C.Z.B.*, 151 S.W.3d 627, 633 (Tex. Ct. App. 2004). Under the doctrine, a litigant is "generally prevent[ed] . . . from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in

another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 2154, n.8, 147 L. Ed. 2d 164 (2000). Thus,

> "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

*Hubbard v. State Farm Indem. Co.*, 213 W. Va. 542, 552 n.21, 584 S.E.2d 176, 186 n.21 (2003) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001)). *See also* Syl. pt. 2, *West Virginia Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005). "Although judicial estoppel also protects the opposing party from unfair strategy, the point of the doctrine is not the connection between the parties, but the connection between one party and the court." *Swahn Grp., Inc. v. Segal*, 183 Cal. App. 4th 831, 847, 108 Cal. Rptr. 3d 651, 664 (2010).

The facts of this case clearly show that the Petitioner obtained a favorable ruling from the trial court to allow her to reveal confidential information to the psychologist, with the understanding that the psychological report would be turned over to the court for consideration at sentencing. Specifically, the Petitioner set out the following in her motion-brief to the trial court:

> The benefit to the Court of a psychological evaluation and risk assessment is that the Court will have an indication of the Defendant's risk of re-offending or criminogenic needs. Criminogenic needs are the characteristics or circumstances (such as antisocial attitudes, beliefs, thinking patterns, and friends) that research has shown are associated with criminal behavior, but which a person can change (i.e., they are dynamic). The psychological evaluation will be another tool for the Court to use in determining whether or not the Defendant may be a better candidate for probation or for prison time. The evaluation will be much better at helping the Court making a sentencing determination because it will identify any

5

circumstances and mental health issues affecting the defendant's behavior at the time of the subject offenses.

Based upon the above representations by the Petitioner that she would allow the psychological report to be used by the court in sentencing her, the trial court denied the State's objections and permitted the Petitioner to disclose to the psychologist information about the criminal case and DHHR reports from a separate civil proceeding. In the Petitioner's brief to this Court, she admits that defense "[c]ounsel did discuss the explanation of the Defendant's charges with Dr. Fremouw, and did provide Dr. Fremouw with the police report and the DHHR reports."

After obtaining a favorable ruling from the trial court allowing disclosure of confidential information to the psychologist, in exchange for a specific promise to turn over the psychological report for sentencing purposes, the Petitioner now asserts for the first time that the psychological report is protected from disclosure by the attorney-client privilege and the work product doctrine. We are gravely concerned by the Petitioner's blatant attempt to insult the integrity of the judicial process by pretending that her promise to the court did not exist. It is precisely this type of shenanigan that judicial estoppel cuts off at the knees. "The doctrine estops a party from playing 'fast-and-loose' with the courts or to trifle with the proceedings." *Quinn v. Sharon Corp.*, 343 S.C. 411, 416, 540 S.E.2d 474, 477 (Ct. App. 2000) (citation omitted). Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (internal quotations and citation omitted). *See also Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988) ("The purpose of the doctrine is to protect the courts from the perversion of judicial machinery." (internal quotations and citation omitted)). The Petitioner came to the trial court with a promise to disclose the psychological report to the court, if the court allowed the Petitioner to reveal certain information to the psychologist. In making this promise to the court, the Petitioner implicitly waived any attorney-client privilege and work product protections the psychological report may have had. However, now that the report has been generated, the Petitioner has changed her mind about disclosure and is seeking the protection of those privilege doctrines. We will not allow this. It is "patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." *M. Perez Co. v. Base Camp Condominiums Ass'n No. One*, 111 Cal. App. 4th 456, 463, 3 Cal. Rptr. 3d 563, 569 (2003) (internal quotations and citation omitted).

To be clear, if the Petitioner wished to preserve any claim to the attorney-client privilege and work product doctrine, she should have stated expressly in her motion to the court that she reserved the right not to turn over the report because of those doctrines. No

such preservation of rights was asserted.  Consequently, the Petitioner cannot change her position on the disclosure of the psychological report simply because she may not like its contents.  *See Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 915 (7th Cir. 2005) ("Judicial estoppel is intended to protect the courts from the litigatory shenanigans that would result if parties could, without limitation or consequence, swap litigation positions like hats in successive cases based on simple expediency or self-benefit.  Judicial estoppel shields the courts from being the instrument of such misconduct.").

Writ denied.

ISSUED:  October 6, 2016

CONCURRED IN BY:
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

DISSENTING:  Justice Brent D. Benjamin, dissenting and writing separately.

Benjamin, Justice, dissenting:

The majority incorrectly relies on the doctrine of judicial estoppel to deny the petitioner extraordinary relief, opting instead to uphold the directive below that she disclose to the circuit court and to her adversary privileged information and proprietary work-product that she fears will prove detrimental at sentencing.  Absent any indication that defense counsel here "intentionally misled the court to gain unfair advantage," *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (citation and internal quotation marks omitted), the doctrine simply has no application.  Indeed, "[t]his bad faith requirement is the 'determinative factor.'"  *Id.* (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)).

*Zinkand* was a civil rights action alleging that the defendant police officer used excessive force against the plaintiff during a drug arrest.  The trial court granted summary judgment to the officer on the ground of judicial estoppel, determining that the plaintiff had previously entered an *Alford* plea to a criminal charge of resisting arrest stemming from the same incident.  The Fourth Circuit reversed, noting that the trial court specifically declined

7

to "suggest[] subjective bad faith on the part of Mr. Zinkand."  438 F.3d at 638.  The court of appeals observed simply that "[w]ithout bad faith, there can be no judicial estoppel."  *Id.*  The bad-faith rule of *Zinkand* has been applied on multiple occasions by both federal district courts in West Virginia.

Without question, defense counsel hoped to persuade the circuit court to her point of view by representing that the proposed psychological evaluation and risk assessment would ultimately be of benefit at sentencing.  The court, however, should have been savvy enough "to discount the hyperbole of an advocate," *United States v. Vaccaro*, 115 F.3d 1211, 1216 (5th Cir. 1997), and decline to hold counsel's frustrated expectations against her client.  To suppose that the circuit court was somehow duped into granting the defendant's motion strains credulity.  Had the court truly experienced an epiphany as the result of counsel's entreaties that the defendant's psychological state would be the preeminent consideration at sentencing, it should have ordered its own independent examination.

Moreover, the motion's grant was no boon to the defendant; she did not need the circuit court's permission to show her psychologist the police report or to discuss her first-hand knowledge of the factual basis supporting the offenses with which she was charged.  The abuse-and-neglect casefile evidently contained some confidential information directly pertaining to the children that may have been useful to the psychologist, but we have not been apprised as to the nature of that information or how it ultimately benefited the defendant.  In short, one who would cast defense counsel's advocacy as a fraud upon the court should come to realize that:  (1) the court could not have justifiably relied on counsel's impassioned representations; and (2) counsel received little in the way of material benefit for her client.

The criminal defense bar ought to be able to confidently develop expert services and opinions on behalf of their clients for sentencing purposes without fear that the information thereby derived, if proved harmful instead of useful, will fall into the hands of the prosecution.  The adversary process and its attendant safeguards, including time-honored privileges and the work-product doctrine, does not cease to exist once a criminal defendant has pleaded guilty or is found to be so.  Unfortunately, the majority's well-intentioned efforts in this instance to improve the flow of relevant information to the circuit court will, in the longer term, perversely and inevitably impede the truth-seeking function of sentencing proceedings and render them less accurate by chilling the efforts of criminal defense lawyers to effectively advocate for their clients.

For all the foregoing reasons, I respectfully dissent from the majority opinion.